13 P.3d 1188

CITIZENS FOR GROWTH MAN-
AGEMENT and Sandra
Bahr, Petitioners,

v.

Jeff GROSCOST, Speaker of the Arizona House of Representatives and Chair of the Legislative Council; Brenda Burns, President of the Arizona Senate and member of the Legislative Council; Representative Lori Daniels, member of the Legislative Council; Representative Herschella Horton, member of the Legislative Council; Representative Marilyn Jarrett, member of the Legislative Council; Representative John Loredo, member of the Legislative Council; Representative Robert McLendon, member of the Legislative Council; Representative Jim Weiers, member of the Legislative Council; Senator Russell Bowers, member of the Legislative Council; Senator Jack Brown, member of the Legislative Council; Senator Chris Cummiskey, member of the Legislative Council; Senator Ann Day, member of the Legislative Council; Senator Darden Hamilton, member of the Legislative Council; Senator Peter Rios, member of the Legislative Council; Betsey Bayless, Secretary of State; all in their official capacity, real parties in interest, Respondents.

No. CV–00–0259–SA.

Supreme Court of Arizona,
En Banc.

Dec. 8, 2000.

Arizona Center for Law in the Public Interest by Joy E. Herr–Cardillo and Timothy M. Hogan, Phoenix, Attorneys for Petitioners.

Gallagher & Kennedy, P.A. by John E. Lundin and Jeffrey D. Gross, Phoenix, Attorneys for Respondents Groscost and Burns.

## OPINION

ZLAKET, Chief Justice.

¶ 1 This special action challenges the Arizona Legislative Council's analysis of the Citizens Growth Management Initiative (CGMI). We considered the case without oral argument and issued an order accepting jurisdiction and granting relief on August 7, 2000. Pursuant to Ariz.Rev.Stat. § 19–124(B) (West Supp.1999), we decided that the first paragraph of the Council's analysis should be deleted or revised to provide an impartial description of the initiative measure, free of argument or advocacy. Our order indicated that this opinion would follow.

¶ 2 We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(1) and Ariz.R.P.Spec. Act. 1. *Arizona Legislative Council v. Howe,* 192 Ariz. 378, 382, 965 P.2d 770, 774 (1998); *Fairness & Accountability in Ins. Reform v. Greene,* 180 Ariz. 582, 590, 886 P.2d 1338, 1346 (1994) ("Section 19–124 would be meaningless if this court had no power to review the actions of the Council and determine whether it carried out its statutory responsibility to prepare an impartial analysis and description of [the proposition].").[1]

¶ 3 Prior to elections in which an initiative or referendum is on the ballot, the Secretary of State is required to prepare a publicity pamphlet for distribution to Arizona voters. Ariz.Rev.Stat. § 19–123(A) (West Supp.1999). With respect to initiative measures, the pamphlet must contain, among other things, a Legislative Council analysis of each ballot proposal, a fiscal impact summary prepared by the Joint Legislative Budget Committee staff, and any submitted arguments for or against enactment. *Id.*

█ ¶ 4 At issue here is the CGMI analysis prepared by the Legislative Council. Section 19–124(B) states that the Council "shall prepare and file ... an *impartial* analysis of the provisions of each ballot proposal of a measure or proposed amendment." (Emphasis added). The purpose of the analysis is to "assist voters in rationally assessing an initiative proposal by providing a fair, neutral explanation of the proposal's contents and the changes it would make if adopted." *Greene,* 180 Ariz. at 590, 886 P.2d at 1346. Its language "must not mislead, be 'tinged with partisan coloring,' or argue for one side or the other." *Howe,* 192 Ariz. at 383, 965 P.2d at 775 (citations omitted).

¶ 5 The Legislative Council's analysis of the CGMI contains the following opening paragraph:

> Arizona cities, towns and counties currently have extensive authority to regulate development and land uses in their communities through local planning and zoning powers. These local planning powers have been expanded by new laws passed in 1998 and 2000. The new laws, already in effect, require among other things, increased citizen review and involvement in rezonings and other land use decisions. They also require the development of comprehensive growth management plans, in conjunction with their citizens and other affected parties including, among others, the Department of Water Resources and the Department of Environmental Quality. The plans must be approved by voters in large or fast-growing cities and towns. In addition, major amendments to these plans have to be held for consideration at a single annual community hearing. These existing laws also appropriated $220,000,000 for preserving open space.[2]

¶ 6 As can be seen, this paragraph does not mention the CGMI at all. Instead, it offers an interpretation of existing law. While we accept that the Council's analysis may provide a neutral description of current law in explaining a proposal's potential effect, Ariz.Rev.Stat. § 19–124(B), the above language does much more. It attempts to persuade the reader at the very outset that present laws adequately address the perceived problems the initiative seeks to remedy. The first sentence proclaims that Arizona cities, towns, and counties "currently have extensive authority" to regulate land use. The analysis then asserts that these powers were recently "expanded by new laws," referring to the "Growing Smarter" legislation of 1998 and 2000. Thereafter, it outlines in some detail the changes purportedly made by that earlier legislation. The obvious conclusion to be drawn from the Council's description—before the voter has a chance to read word one about the proposal

1. The dissent claims there are "substantial separation of powers issues associated with judicial review of Legislative Council drafting under A.R.S. § 19–124(B)." *Infra* at ¶ 17. This suggestion was rejected by the court in *Greene,* which stated:

   > In summary, we hold that the legislative council's preparation of an initiative analysis pursuant to A.R.S. § 19–124(B) is an *administrative and not a legislative function.* This court, therefore, has jurisdiction to review such analyses for compliance with the legislature's directive that they be impartial.

   180 Ariz. at 593, 886 P.2d at 1349 (emphasis added).

2. Because we hold that only the first paragraph violates Ariz.Rev.Stat. § 19–124(B), we do not present the remainder of the Council's analysis.

itself—is that the CGMI is unnecessary. In our view, this rhetorical strategy is not impartial.

¶ 7 As previously mentioned, the summary says that cities and towns currently have "extensive" authority to regulate development and land use. But whether such power is "extensive," as respondents argue, or "limited," as petitioners contend, is at the heart of Arizona's heated debate about growth. In this context, the words have partisan connotations.

¶ 8 The analysis also states that present law "require[s] the development of comprehensive growth management plans." However, nothing like the term "comprehensive growth management plan" is used in the Growing Smarter legislation, which merely continues the use of "general plans" in dealing with growth-related matters. Ariz.Rev. Stat. § 9–461.05 (West Supp.1999).

¶ 9 Terminology aside, the paragraph in question clearly implies that Growing Smarter's approach to growth management issues is equal to, or better than, that of the CGMI. But again, whether Growing Smarter or the CGMI best addresses Arizona's needs stands at the heart of the controversy. The Legislative Council's "impartial" analysis is not the proper place to argue the merits of either position.

¶ 10 Finally, we are troubled by the Council's statement that the Growing Smarter Act allocates $220 million "for preserving open space." Section 41–511.23(D)(2) appropriates $20 million per year in fiscal years 2000–2011 for a land conservation fund. However, those dollars must be *matched* by private donations or other monies and may only be used "[t]o purchase or lease state trust lands that are classified as suitable for conservation purposes pursuant to title 37, chapter 2, article 4.2." Ariz.Rev.Stat. § 41–511.23(G)(1)(a) (West Supp.1999). The omission of such critical information is significant. This is not merely a case of impartiality being in the "eye of the beholder," as the respondents suggest.[3] There is clearly a degree of advocacy at work here.

¶ 11 The dissent advances a whole-is-greater-than-the-sum-of-its-parts theory, finding the entire analysis impartial even though certain sentences or paragraphs are not. *Infra* at ¶ 20. Under this view, it claims there is no need to review "paragraph by paragraph and word by word." *Infra* at ¶ 20. While such an approach may be convenient for the court and helpful to the Legislative Council, it fails to meet the needs of those citizens having an interest in a fair election. *See Sotomayor v. Burns,* 199 Ariz. 81, 82, 13 P.3d 1198, 1199 (2000); *Harris v. Purcell,* 193 Ariz. 409, 414, 973 P.2d 1166, 1171 (1998). In light of the very clear and specific directive of Ariz.Rev.Stat. § 19–124(B), initiative sponsors, petition signers, and voters have every right to expect a completely neutral summary, without advocacy or argument.

¶ 12 The dissent's assertion that we have somehow "enmeshed this court in the unwholesome and unhealthy process of second guessing drafting minutiae," *infra* at ¶ 19, is unfounded. The question presented in these cases is whether reasonable minds could conclude that the analysis is impartial, not whether the judicial system could have written it better. *Howe,* 192 Ariz. at 383, 965 P.2d at 775. No member of this court has any particular fondness for these challenges. Nevertheless, because "judicial review is the only method to ensure that the official publicity pamphlet for ballot proposals complies with the statutory requirements," we are obliged to strictly enforce the laws enacted by the legislature. *Id.* at 383, 965 P.2d at 775 (citing *Greene,* 180 Ariz. at 590–91, 886 P.2d at 1346–47). The dissent's laissez faire approach to the problem does not comport with either the statutes or our past cases.

¶ 13 This is one of three similar challenges presented to us in this election cycle. *See Healthy Arizona Initiative PAC v. Groscost,* 199 Ariz. 75, 13 P.3d 1192 (2000); *Sotomayor,* 199 Ariz. at 82, 13 P.3d at 1199. We cannot help but wonder why the drafting of neutral initiative summaries proves to be

---

**3.** The dissent admits that paragraph one of the analysis "might have been more impartial than it is." *Infra* at ¶ 20. Either an analysis is impartial or it is not. Section 19–124(B) does not create or recognize degrees of impartiality.

such a difficult task, but choose to leave that inquiry for another time. The law is clear in its meaning and purpose; our duty is to interpret and apply it as written. *Jennings v. Woods*, 194 Ariz. 314, 316, 982 P.2d 274, 276 (1999). We therefore hold that the first paragraph of the Legislative Council's analysis violates Ariz.Rev.Stat. § 19–124(B). This portion of the explanation appears to be an attempt to affect the outcome of the public vote, rather than an impartial, neutral description of the proposition.[4] Hence, we ordered the Council to delete or revise this paragraph in compliance with § 19–124(B).[5]

## Attorneys' Fees

■ ¶ 14 Petitioners seek attorneys' fees pursuant to Ariz.Rev.Stat. § 12–2030. This statute reads in part:

> A court shall award fees and other expenses to any party other than this state ... which prevails by an adjudication on the merits in a civil action brought by the party against the state ... to compel a state officer ... to perform an act imposed by law as a duty on the officer.

Ariz.Rev.Stat. § 12–2030(A) (West Supp. 1999).

¶ 15 Respondents argue that because these claims were brought against the individual members of the Legislative Council and the Secretary of State in their official capacities, there is no action against the "state" within the meaning of the statute. The argument is without merit. The state can only act through its officers. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (citation omitted); *see also* Ariz. Rev.Stat. § 12–348(I)(3) (West Supp.1999) (defining "state," with respect to awarding attorneys' fees and expenses, as "this state

and any agency, officer, department, board or commission of this state"); *Arkansas Tech Univ. v. Link*, 341 Ark. 495, 17 S.W.3d 809, 813 (2000); *White v. Burns*, 213 Conn. 307, 567 A.2d 1195, 1198 (1990); *Capital Properties, Inc. v. State*, 749 A.2d 1069, 1081 (R.I. 1999).

¶ 16 Clearly, the respondents were acting in their roles as state officials and under the cloak of that authority. Thus, the lawsuit was brought "against the state," and petitioners are entitled to recover reasonable fees and expenses under Ariz.Rev.Stat. § 12–2030.

CONCURRING: CHARLES E. JONES, Vice Chief Justice, RUTH V. MCGREGOR, Justice, and PHILIP E. TOCI, Judge.

Justice STANLEY G. FELDMAN recused himself. Pursuant to Ariz. Const. art. VI, § 3, the Honorable PHILIP E. TOCI, Judge of the Court of Appeals, Division One, was designated to sit in his stead.

MARTONE, Justice, dissenting.

¶ 17 Because there are substantial separation of powers issues associated with judicial review of Legislative Council drafting under A.R.S. § 19–124(B), *see Fairness and Accountability in Ins. Reform v. Greene*, 180 Ariz. 582, 593, 886 P.2d 1338, 1349 (1994) (Moeller, V.C.J., dissenting), we of necessity adopted a very deferential standard of review. In *Arizona Legislative Council v. Howe*, 192 Ariz. 378, 965 P.2d 770 (1998), we distilled three formulations of the standard:

> (1) "[t]he question is whether reasonable minds could conclude that the Council met the requirements of the law, not whether we believe the judicial system could itself devise a better analysis." *Id.* at 383, 965 P.2d at 775.
>
> (2) "We cannot settle each of these disputes; our function is only to ensure that a challenged analysis is reasonably impartial

---

4. Finding it advantageous to "parse" the *Howe* opinion, while criticizing the majority for doing so with respect to the Council's analysis, the dissent combines three unconnected sentences and discerns a "deferential standard of review." *Infra* at ¶ 17. But *Howe* merely applied the statutory requirement articulated in *Greene*. *Howe*, 192 Ariz. at 383, 965 P.2d at 775. The only real difference between the two cases is the

result, which may explain the dissent's preference for *Howe*. There, the Council's analysis was found to be "neither inaccurate nor inherently misleading." *Id.* at 384, 965 P.2d at 776.

5. We do not find it necessary to examine whether § 19–124 places an unreasonable burden on the people's right of initiative under Ariz. Const. art. IV, pt. 1, § 1.

and fulfills the statutory requirements defined in *Greene*." *Id.*

(3) The "analysis" [must] "substantially compl[y] with the requirement of A.R.S. § 19–124(B)." *Id.* at 384, 965 P.2d at 776.

¶ 18 In *Greene*, Justice Moeller warned us that our "majority opinion invites the routine challenge in this court of Legislative Council analyses over the very subjective meaning of the words 'impartial analysis' in section 19–124(B)." 180 Ariz. at 597, 886 P.2d at 1353. We took heed of this warning by adopting a deferential standard and by noting that while "proponents and opponents are often dissatisfied with the Council's analyses," "[w]e cannot settle each of these disputes." *Howe*, 192 Ariz. at 383, 965 P.2d at 775.

¶ 19 I fear that today, in this case and in the companion case of *Healthy Arizona Initiative PAC v. Groscost*, No. CV–00–0274–SA, we have given credence to Justice Moeller's prediction and have enmeshed this court in the unwholesome and unhealthy process of second guessing drafting minutiae.

¶ 20 I would not parse through Legislative Council's analysis paragraph by paragraph and word by word. Nor are we equipped to do so under the very tight deadlines imposed by cases of this sort. In the best of all worlds, paragraph one might have been more impartial than it is. But under our standard, we must take the Council's analysis as a whole, not bit by bit. As a whole, I would conclude, that "reasonable minds could conclude that the Council met the requirements of the law." *Howe*, 192 Ariz. at 383, 965 P.2d at 775. Taken as a whole, Legislative Council's analysis is "reasonably impartial." *Id.* I would thus conclude that the Council's analysis "substantially complies with the requirements of A.R.S. § 19–124(B)." *Id.* at 384, 965 P.2d at 776.

¶ 21 I therefore respectfully dissent.