SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| YES FOR ARIZONA!, a registered Arizona Political Committee; COLORADO RIVER INDIAN TRIBES, | ) ) ) ) | Arizona Supreme Court No.  CV-02-0238-SA |

YES FOR ARIZONA!, a registered   )    Arizona Supreme Court
Arizona Political Committee;      )    No.  CV-02-0238-SA
COLORADO RIVER INDIAN TRIBES,     )
                                  )
          Petitioners,            )
                                  )
               v.                 )
                                  )
REP. JIM WIERS, Speaker of the    )
House of Representatives and      )
Co-Chair of Legislative Council;  )
SEN. RANDALL GNANT, President of  )
the Senate and Co-Chair of the    )
Legislative Council; REP. KEN     )
CHEUVRONT, Member of the          )
Legislative Council; REP. LINDA   )
GRAY, Member of the Legislative   )
Council; REP. LAURA KNAPEREK,     )    **MEMORANDUM DECISION**
Member of the Legislative         )    (Not for Publication -
Council; REP. LEAH                )    Rule 111, Rules of the
LANDRUM-TAYLOR, Member of the     )    Arizona Supreme Court)
Legislative Council; REP. MARION  )
PICKENS, Member of the            )
Legislative Council; REP. BOB     )
ROBSON, Member of the             )
Legislative Council; SEN. KEN     )
BENNETT, Member of the            )
Legislative Council; SEN. JACK    )
BROWN, Member of the Legislative  )
Council; SEN. CHRIS CUMMISKEY,    )
Member of the Legislative         )
Council; SEN. TONI HELLON,        )
Member of the Legislative         )
Council; SEN. DAVID PETERSON,     )
Member of the Legislative         )
Council; SEN. PETER RIOS, Member  )
of the Legislative Council; and   )
BETSEY BAYLESS, Arizona           )
Secretary of State, all in their  )
official capacities,              )
          Respondents.            )
_____ )
                                  )
                                  )
                                  )

Petition for Special Action

BROWN & BAIN, P.A.                                                    Phoenix
    By   Paul F. Eckstein
    and  Dan L. Bagatell
    and  Michael S. Mandell
Attorneys for Petitioners

GALLAGHER & KENNEDY, P.A.                                             Phoenix
    By   John E. Lundin
    and  John G. Kerkorian
Attorneys for Respondents

JANET A. NAPOLITANO, ARIZONA ATTORNEY GENERAL                         Phoenix
    By   Joseph A. Kanefield, Assistant Attorney General
Attorneys for Respondent Betsey Bayless, Secretary of State

**R Y A N**, Justice

¶1        Arizona Revised Statutes ("A.R.S.") section 19-124(B) (2002) requires the Arizona Legislative Council to prepare an impartial analysis of ballot propositions. The question this special action raises is whether the Council's analysis of Proposition 200, entitled "Tribal-State Gaming Compact, College Scholarship and Elderly Care Act of 2002" was fair and impartial. Concluding in a previous order that the Council did not impartially analyze the effect of the proposition on the regulation of Indian gaming, we accepted jurisdiction, granted relief, and directed the Secretary of State to strike certain language from the Council's analysis. We now explain our previous order.

## I.  Background

2

¶2	Proposition 200 is a citizens' initiative circulated by Petitioners. The proposition requires the governor to enter gaming compacts with Arizona Indian tribes containing terms and conditions set forth in the initiative. The initiative authorizes Arizona Indian tribes to conduct gaming allowed by federal law according to provisions contained in the compact and negotiated between each tribe and the governor.

¶3	To comply with A.R.S. § 19-124(B), the Council's staff drafted an analysis of Proposition 200. At a public hearing, Stephen Hart, the Director of the Arizona Department of Gaming and an opponent of Proposition 200, persuaded the Council to amend the analysis in several ways. With respect to the analysis of the regulatory provision, Hart offered the following amendments, which are italicized:

> Regulation - Gaming facility operators must keep surveillance logs that are open to inspection by the Arizona Department of Gaming, *but no other records are subject to Department of Gaming inspection, including financial and accounting records . . . . The tribal gaming office is authorized to conduct investigations of compact violations. The Department of Gaming has access to tribal gaming office reports but is not authorized to conduct independent investigations.*

The Council approved the amendments with apparently no discussion of the above additions.

¶4	Petitioners' counsel did not receive a copy of Hart's suggested amendments before the public hearing. Petitioners'

3

representatives also did not have a copy of the amendments before or during the hearing when the Council voted to accept the amendments.

**¶5** Eventually, Petitioners' counsel was able to confirm that the Legislative Council adopted the amendments advocated by Hart. Petitioners' counsel then wrote to the Council, expressing Petitioners' concerns that some of the amended language was "inaccurate" and "not impartial." He also requested that the original analysis be restored. Nevertheless, the Council submitted the amended analysis to the Secretary of State for inclusion in the voter publicity pamphlet. *See* A.R.S. § 19-123 (2002). This special action followed.[1]

## II.  Discussion

**¶6** We first address Respondents' contention that Petitioners are barred from seeking relief because they failed to raise timely objections at the hearing. We conclude that Petitioners did not waive their objections to the Council's analysis. Petitioners did not receive the proposed amendments to the analysis before the hearing. And apparently the proposed amendments were not given to Petitioners until the hearing was nearly completed. Under such

---

[1] We exercise jurisdiction under the principles set forth in *Arizona Legislative Council v. Howe*, 192 Ariz. 378, 382, ¶ 10, 965 P.2d 770, 774 (1998), and *Fairness and Accountability in Insurance Reform v. Greene*, 180 Ariz. 582, 590, 886 P.2d 1338, 1346 (1994).

circumstances, we find no waiver. *See Mohave County v. Mohave-Kingman Estates, Inc.*, 120 Ariz. 417, 421, 586 P.2d 978, 982 (1978). Additionally, Respondents have not demonstrated any prejudice. *See Sotomayor v. Burns*, 199 Ariz. 81, 83, ¶ 8, 13 P.3d 1198, 1200 (2000) (no prejudice to Legislative Council when simply required to delete language that is partial). Therefore, we turn to the merits of the petition.

**¶7** In *Fairness and Accountability in Insurance Reform v. Greene*, we held "that A.R.S. § 19-124(B) requires the legislative council to produce a neutral explanation of initiative proposals, avoiding argument or advocacy, and describing the meaning of the measure, the changes it makes, and its effect if adopted." 180 Ariz. 582, 591, 886 P.2d 1338, 1347 (1994). "Put another way, the language must not mislead, be 'tinged with partisan coloring,' or argue for one side or the other." *Ariz. Leg. Council v. Howe*, 192 Ariz. 378, 383, ¶ 16, 965 P.2d 770, 775 (1998) (quoting *Greene*, 180 Ariz. at 590, 886 P.2d at 1346). When a dispute arises over the Council's analysis, this court's "function is only to ensure that a challenged analysis is reasonably impartial and fulfills the statutory requirements defined in *Greene*." *Id*. at ¶ 17, 965 P.2d at 775.

**¶8** The dispute here focuses on two parts of the Council's amended analysis of the regulatory provisions of the proposition. Petitioners object to the phrase: "but no other records are subject

5

to the Department of Gaming inspection, including financial and accounting records." They also object to the phrase: "but [the Department of Gaming] is not authorized to conduct independent investigations." They contend that these phrases are misleading and do not fairly and impartially describe the effect of the proposition on the regulation of Indian gaming. We conclude that these phrases are misleading because Proposition 200 does not limit the Department's inspection of records only to surveillance logs, nor does it entirely eliminate the Department's authority to conduct independent investigations. Our conclusion is based on the following reasons.

¶9        First, sections 2(f), Findings and Declarations, and 3(f), Purpose and Intent, of Proposition 200 acknowledge the need for State monitoring of gaming on Indian reservations. Second, Proposition 200 does not limit the type of records that must be maintained nor the type of records available for inspection solely to surveillance logs. It is true that only section 4(B)(8) of Proposition 200 specifically refers to any record keeping and authority of the Department to inspect records. That subsection requires gaming facility operators to maintain surveillance logs, which must be available for inspection by the Department of Gaming. But section 4(B)(8) does not prohibit the governor and a tribe from agreeing to make additional records available for the Department's inspection.

¶10       Third, any compact agreed to by a tribe and the governor must incorporate "the same appendix provisions relating to the

6

definitions, operational standards, specifications and regulations governing Keno, the technical standards for electronic games of chance and the security and surveillance requirements as contained in [the] Indian Tribe's Gaming Compact in effect as of January 1, 2002." Proposition 200 § 4(B)(16). These appendices require the tribes to maintain certain records and permit the Department access to such records. For example, section 2 of Appendix A of the existing compact requires all electronic games of chance be tested and certified by laboratories approved by the Department. And under Section 5 of Appendix A, such test results must be reported to the Department. Section 8 of the appendix lists eight types of reports that must be submitted to the Department. Additionally, section H of Appendix C states that "the State Gaming Agency and [its] respective authorized employees shall at all times be provided immediate access to the surveillance room and all areas, public and non-public, of the Gaming Facility."

¶11 Respondents, however, argue that section 4(B)(16) of Proposition 200 permits the governor and a tribe to agree to different provisions than are in the current appendices. But any such agreement is a possibility, not a certainty. Moreover, section 4(B)(16) requires that any compact contain provisions similar to those in the existing appendices in the absence of any agreement otherwise. *Id*. Accordingly, the Council's statement that the proposition prohibits the Department from inspecting any records other than surveillance logs exaggerates the effect of the proposition on the type of records that the Department may be

7

permitted to inspect.

¶12      Fourth, while Proposition 200 section 4(B)(13) invests the tribes with the authority to investigate any violations of the tribal-state gaming compacts, it does not specifically preclude the governor and a tribe from agreeing to allow the Department also to investigate violations of the compact.  Nor does Proposition 200 eliminate all independent investigatory authority of the Department.  For example, section 4(B)(15) of Proposition 200 impliedly grants the Department the power to investigate non-enrolled members of an Indian tribe seeking an application for, or renewal of, a gaming license.  Under this provision, non-enrolled tribal members must submit applications for a gaming license, or renewal of a gaming license, to the Department.  *Id*.  The Department then either approves or denies the application.  *Id*.  The authority to approve or disapprove applications necessarily implicates a power to investigate.  Therefore, Proposition 200 does not completely do away with the Department's authority to conduct independent investigations as stated by the Council's analysis.

¶13      Finally, the governor and a tribe may agree to more regulation, investigation, and inspection than currently required.  *See id.* § 4(B)(19).  Thus, although Proposition 200 significantly reduces the authority of the Department to inspect records and conduct independent investigations, it does not entirely eliminate the Department from exercising such authority.

### III.  Attorneys' Fees

¶14     Petitioners request an award of attorneys' fees under A.R.S. § 12-2030(A) (Supp. 2001), which states that "[a] court shall award fees . . . to any party other than this state . . . which prevails by an adjudication on the merits in a civil action brought by the party against the state, . . . to compel a state officer . . . to perform an act imposed by law as a duty on the officer."  Because Petitioners prevailed in this civil case against the State, we award them their attorneys' fees.  *See Citizens for Growth Mgmt. v. Groscost*, 199 Ariz. 71, 74, ¶ 16, 13 P.3d 1188, 1191 (2000).

## IV.  Conclusion

¶15     In summary, we hold that the Council's analysis with respect to the regulatory effect of Proposition 200 violated A.R.S. § 19-124(B) because the analysis was not a "neutral explanation" of Proposition 200.  *See Greene,* 180 Ariz. at 591, 886 P.2d at 1347. Accordingly, we accepted jurisdiction, granted relief, and ordered the Secretary of State to strike  from the Council's analysis of Proposition 200 the language to which Petitioners objected.  *See id*. at 586, 886 P.2d at 1342; *Howe*, 192 Ariz. at 384, ¶ 23, 965 P.2d at 776.


_____
Michael D. Ryan, Justice


CONCURRING:


_____


9

Charles E. Jones, Chief Justice

_____
Ruth V. McGregor, Vice Chief Justice




_____
Stanley G. Feldman, Justice


_____
Rebecca White Berch, Justice