SUPREME COURT OF ARIZONA

| | |
|---|---|
| REP. ANDREW TOBIN, Chairman of Legislative Council; SEN. STEVE PIERCE, Co-Chairman of Legislative Council; SEN. ANDY BIGGS, Member of Legislative Council; SEN. LINDA GRAY, Member of Legislative Council; SEN. LORI KLEIN, Member of Legislative Council; SEN. STEVE YARBROUGH, Member of Legislative Council; REP. STEVE COURT, Member of Legislative Council; REP. DEBBIE LESKO, Member of Legislative Council; and REP. STEVE MONTENEGRO, Member of Legislative Council, | Arizona Supreme Court No. CV-12-0273-SA Maricopa County Superior Court No. CV2012-010912 **O P I N I O N** |
| Petitioners, | |
| v. | |
| HONORABLE JOHN REA, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County of Maricopa, | |
| Respondent, | |
| QUALITY EDUCATION & JOBS SUPPORTING I-16-2012, a registered Arizona Political Committee, | |
| Real Party in Interest. | |

Special Action from the Superior Court in Maricopa County
The Honorable John Christian Rea, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

ARIZONA LEGISLATIVE COUNCIL                                    Phoenix
        By   Michael E. Braun
             Kenneth C. Behringer
             Michele J. Hanigsberg
             Patricia A. Probst
             Anthony Tsontakis
Attorneys for Petitioners Andrew Tobin, Steve Pierce, Andy
Biggs, Linda Gray, Lori Klein, Steve Yarbrough, Steve Court,
Debbie Lesko, and Steve Montenegro

TORRES LAW GROUP, PLLC                                          Phoenix
        By   James E. Barton II
Attorneys for Real Party in Interest Quality Education & Jobs
Supporting I-16-2012

PERKINS COIE LLP                                                Phoenix
        By   Paul F. Eckstein
             D. Andrew Gaona
Attorneys for Amicus Curiae We Build Arizona
_____

**P E L A N D E R**, Justice

**¶1**      Quality Education & Jobs Supporting I-16-2012 ("the

Committee") challenged the Legislative Council's analysis of

that initiative ("Proposition 204" or "the Act"), claiming that

the analysis was misleading and not impartial.  The superior

court upheld that challenge in part and ordered the Council to

revise or delete the analysis in certain respects.  The Council

then filed a petition for special action in this Court.  On

August 17, 2012, we issued an order accepting jurisdiction but

denying relief, thereby upholding the superior court's order.

This opinion explains our reasoning.[1]

_____

[1]     On November 6, 2012, the voters rejected Proposition
204.  Ariz. Sec'y of State, *State of Arizona Official*

2

**I.**

**¶2** In a May 2010 special election, the people of Arizona approved a tax measure designated as Proposition 100. That proposition amended our state constitution to levy an additional, temporary one percent sales tax "for the purpose of raising state revenues for primary and secondary education, health and human services and public safety." Ariz. Const. art. 9, § 12.1(A) (2010); *see id.* Historical and Statutory Notes. The temporary tax was imposed for three years and will automatically expire on May 31, 2013. *Id.* § 12.1(B), (H).

**¶3** In 2012, the Committee applied for and processed an initiative for the stated purpose of "renew[ing] the one-cent sales tax" to provide "dedicated funding" for various education, public safety, and transportation-related matters. The initiative's sales tax and the resulting revenues would not be subject to legislative reduction, revision, or fund sweeps. The Committee collected approximately 290,000 signatures to qualify the initiative to appear on the November 2012 general election ballot as Proposition 204.

**¶4** The Legislative Council then undertook its statutorily required task of preparing an impartial analysis of the initiative. *See* A.R.S. § 19-124(B) (2012). After receiving a

---

*Canvas* 18 (Dec. 3, 2012), *available at* www.azsos.gov/election/2012/General/Canvass2012GE.pdf.

draft from legislative staff, the Council publicly met and considered the analysis. As amended and approved by the Council, the two-page analysis contained as its first paragraph the following:

> Beginning June 1, 2013, Proposition [204] would permanently increase the transaction privilege tax and the use tax ("sales tax") by one cent per one dollar. The proposition anticipates the tax increase to generate at least one billion dollars. The monies collected from the tax increase would be used for educational programs, public transportation infrastructure projects and human services programs as summarized below. Proposition [204] also would require the Legislature to annually increase specific components of the school finance formula. In addition, Proposition [204] would provide that the specified funding levels for the state's kindergarten-through-twelfth-grade and state university systems cannot be reduced below the levels for fiscal year 2011-2012 or 2012-2013, whichever is greater, that limits on school district bonds and overrides cannot be below those in effect for 2012, that vehicle license tax and related highway user revenues cannot be diverted for any other purpose and that the sales tax base cannot be adjusted in a way that causes the amount of sales tax collected to be less than the amount collected in the prior year, plus six per cent, unless there is a corresponding change in the tax base that results in no reduction in the amount of sales tax collected. The Legislature would not have the ability to adjust the new tax increase disbursements under any circumstances.

¶5 In listing how Proposition 204 would annually distribute the first billion dollars of "additional sales tax" revenues, the Council's analysis stated:

4

Fifty million dollars [would go] into the "university scholarship, operations and infrastructure fund", to be distributed according to rules adopted by the Board of Regents. Between fifty and sixty per cent of the fund monies must be used to provide university scholarships to resident students based on financial need or academic achievement, and the remaining fund monies would be allocated to the three state universities for operating and infrastructure expenses based on performance in meeting goals set by the Board of Regents. The proposition fails to define who qualifies as a "resident" for purposes of the scholarships.

¶6 The Committee filed a special action in superior court to challenge portions of the Council's analysis. Among other things, the Committee alleged that the analysis was not impartial because it (1) misleadingly and repeatedly stated that the initiative would impose a "tax increase," when the initiative's additional tax rate increment is identical to that imposed under the existing temporary sales tax approved by voters in 2010, and would take effect only when the existing tax expires on May 31, 2013; (2) inaccurately stated that under the initiative, "the sales tax base cannot be adjusted in a way that causes the amount of sales tax collected to be less than the amount collected in the prior year"; and (3) gratuitously pointed out that the initiative fails to define who qualifies as a "resident" for purposes of distributing university scholarship monies.

¶7 After admitting stipulated exhibits into evidence and

5

hearing oral argument, the superior court ruled in favor of the Committee on the three points noted above. The court ordered that those challenged portions of the analysis must be revised or deleted. The Council's special action in this Court followed.

## II.

**¶8** Subject matter jurisdiction in this matter is undisputed. *See Ariz. Legislative Council v. Howe*, 192 Ariz. 378, 382–83 ¶¶ 11–14, 965 P.2d 770, 774–75 (1998); *Fairness & Accountability in Ins. Reform v. Greene*, 180 Ariz. 582, 586–90, 886 P.2d 1338, 1342–46 (1994). As for special action jurisdiction, the Council's petition raises purely legal issues of statewide importance. *See Cronin v. Sheldon*, 195 Ariz. 531, 533 ¶ 2, 991 P.2d 231, 233 (1999) (citing such factors in accepting jurisdiction of special action from a trial court ruling). In addition, given the time constraints for preparation, printing, and mailing of the Secretary of State's publicity pamphlet, *see* A.R.S. § 19–123 (2012), there is no "equally plain, speedy, and adequate remedy by appeal," Ariz. R. P. Spec. Act. 1(a). Therefore, we accept jurisdiction of the special action. *See* Ariz. R. P. Spec. Act. 1(a), 4(a), 7(b); *Howe*, 192 Ariz. at 382 ¶ 10, 965 P.2d at 774.

¶9      Under A.R.S. § 19-123(A)(4), the Secretary of State's publicity pamphlet, which is mailed to the households of all registered voters before the general election, shall contain "a legislative council analysis of the ballot proposal as prescribed by section 19-124."  In pertinent part, § 19-124 provides:

> Not later than sixty days preceding the regular primary election the legislative council, after providing reasonable opportunity for comments by all legislators, shall prepare and file with the secretary of state an *impartial analysis* of the provisions of each ballot proposal of a measure or proposed amendment.  The analysis shall include a *description of the measure* and shall be written in clear and concise terms avoiding technical terms wherever possible.  The analysis may contain background information, including the effect of the measure on existing law, . . . if the measure . . . is approved or rejected.

A.R.S. § 19-124(B) (emphasis added).

¶10      "[T]he purpose of the required analysis is to assist voters in rationally assessing an initiative proposal by providing a fair, neutral explanation of the proposal's contents and the changes it would make if adopted."  *Greene*, 180 Ariz. at 590, 886 P.2d at 1346.  "It is not the Council's function to assist either side."  *Howe*, 192 Ariz. at 383 ¶ 13, 965 P.2d at 775.  The Council's objective, neutral role differs greatly from that of a measure's proponents and opponents, who will of course "advocate with arguments that, needless to say, may be anything

but neutral expositions." *Id.*; *see* A.R.S. § 19-123(A)(3) (providing that publicity pamphlet "shall contain . . . arguments for and against the measure"); A.R.S. § 19-124(A) (allowing persons to file with Secretary of State "argument[s] advocating or opposing the measure").

¶11     The Council correctly notes that substantial compliance with § 19-124(B) is the standard, *Greene*, 180 Ariz. at 589, 886 P.2d at 1345, and that the question is "whether reasonable minds could conclude that the Council met the requirements of the law, not whether we believe the judicial system could itself devise a better analysis," *Howe*, 192 Ariz. at 383 ¶ 17, 965 P.2d at 775.  But other principles set forth in *Greene*, *Howe*, and more recent cases also guide our analysis.

¶12     In *Greene*, for example, this Court held that § 19-124(B) "requires the legislative council to produce a neutral explanation of initiative proposals, avoiding argument or advocacy, and describing the meaning of the measure, the changes it makes, and its effect if adopted."  180 Ariz. at 591, 886 P.2d at 1347.  "An impartial analysis and description," we further held, "requires the legislative council to eschew advocacy and to adopt, instead, an evenhanded assessment that neither omits, exaggerates, nor understates material provisions of an initiative measure."  *Id.* at 593, 886 P.2d at 1349.

¶13     Likewise, the language used in the Legislative

8

Council's analysis "must be free from any misleading tendency, whether of amplification, of omission, or of fallacy, and it must not be tinged with partisan coloring." *Id.* at 590, 886 P.2d at 1346 (quoting *Plugge v. McCuen*, 841 S.W.2d 139, 140 (Ark. 1992)); *see also Citizens for Growth Mgmt. v. Groscost* (*CGM*), 199 Ariz. 71, 72 ¶ 4, 13 P.3d 1188, 1189 (2000) (same); *Howe*, 192 Ariz. at 383 ¶ 13, 965 P.2d at 775 (same). Employing "rhetorical strategy" in the crafting of wording of the analysis, therefore, is not compatible with the statute's impartiality requirement. *CGM*, 199 Ariz. at 73 ¶ 6, 13 P.3d at 1190.

¶14 To obtain special action relief, the Council must establish that the superior court's ruling is arbitrary, capricious, or an abuse of discretion. Ariz. R. P. Spec. Act. 3(c). Misapplication of law or legal principles constitutes an abuse of discretion. *City of Phoenix v. Geyler*, 144 Ariz. 323, 328–29, 697 P.2d 1073, 1078–79 (1985). Because no evidentiary hearing was held below, "we deal with an issue of law and thus review the trial judge's legal conclusions *de novo*." *Howe*, 192 Ariz. at 383 ¶ 15, 965 P.2d at 775.

¶15 The legal question presented is whether the Legislative Council produced "an impartial analysis of the [initiative's] provisions" and an accurate "description of the measure," as § 19-124(B) requires. We do not write on a blank

9

slate in this area of the law.  In *Greene* and subsequent cases, this Court has evaluated Legislative Council analyses of various initiatives for compliance with § 19-124(B) and established the guiding principles discussed above.  Neither side has urged us to overrule or deviate from those cases.  In concluding that the Legislative Council's analysis did not comply with § 19-124(B)'s requirements in three respects, the superior court, contrary to the Council's argument, properly adhered to our case law and applied the correct legal standards.  Based on those authorities, we cannot say that the superior court erred in its ruling.

**IV.**

**¶16**      Two of the Committee's challenges, which the superior court upheld, relate to the first paragraph of the Legislative Council's analysis.  The first sentence of that paragraph accurately stated that Proposition 204 "would permanently increase the transaction privilege tax and the use tax ('sales tax') by one cent per one dollar."  The paragraph then referred three times to the "tax increase" that the initiative would impose.  The Council rejected a proposed amendment that would have deleted the word "increase" and would have instead inserted the following, new second sentence:  "Currently, there is a three-year temporary one-cent-per-dollar sales tax that will expire on the date this permanent tax goes into effect."  The

10

superior court found the phrase "tax increase," absent some such explanatory context, not impartial.

¶17     Though "fairly debatable," as the superior court remarked, the initiative's proposed tax may fairly be described as a "new" or additional "tax increase." The Council's use of those phrases is neither inaccurate nor partial. Under current law, the state sales tax rate on most business classifications will be 5.6 percent of the tax base on June 1, 2013. A.R.S. § 42-5010(A)(1), (G) (2012). The initiative would impose an additional one percent tax from that date forward, to raise the rate to 6.6 percent. Contrary to the superior court's statement, Proposition 204 would not "continue a temporary tax that would otherwise expire." Rather, the initiative proposes statutory changes that would impose a new, permanent, and legislatively unalterable tax, the revenues of which would be directed to different and broader uses than those under the current, constitutionally-imposed temporary tax.

¶18     Nonetheless, by omitting that the initiative's proposed new tax increase is equivalent in amount to the current, temporary tax increase and would take effect only when the latter expires, the Council's analysis is not completely "free from any misleading tendency." *Greene*, 180 Ariz. at 590, 886 P.2d at 1346. Without providing any such explanatory context, the Council's repeated reference to a "tax increase" in

11

the first paragraph of the analysis "attempts to persuade the reader at the very outset" that the initiative is contrary to his or her financial interests. *CGM*, 199 Ariz. at 72 ¶ 6, 13 P.3d at 1189.

**¶19** Although the Council is not statutorily required to include "background information" in its analysis, A.R.S. § 19-124(B), omission of significant contextual information may be misleading and thus violate the statute, *CGM*, 199 Ariz. at 73 ¶ 10, 13 P.3d at 1190; *Healthy Ariz. Initiative PAC v. Groscost*, 199 Ariz. 75, 77 ¶ 4, 13 P.3d 1192, 1194 (2000); *Sotomayor v. Burns*, 199 Ariz. 81, 82 ¶¶ 4-5, 13 P.3d 1198, 1199 (2000). Here, absent any such information about the timing and identical amount of the existing, albeit temporary, sales tax vis-à-vis the initiative's proposed sales tax increase, the first paragraph of the analysis is not "a completely neutral summary, without advocacy or argument," but rather "appears to be an attempt to affect the outcome of the public vote." *CGM*, 199 Ariz. at 73-74 ¶¶ 11, 13, 13 P.3d at 1190-91. Therefore, the superior court did not err in ordering revision or deletion of that paragraph.

**¶20** We likewise find no error in the superior court's upholding the Committee's challenge to a second aspect of that same paragraph. Section 11 of the initiative proposes to add a new statute, A.R.S. § 42-5029.02, which would include the

12

following subsection, in relevant part:

> G. The tax base under this title shall not be adjusted in any manner that causes a reduction to the annual amount collected and distributed *under this section* to be less than the amount that was collected and distributed in the prior fiscal year increased by six per cent unless the reduction in the tax base is offset by a corresponding change in the tax base that effectively results either in no change in the annual amount collected or an increase in the amount collected.

(emphasis added). Subsections (A) through (C) of proposed § 42-5029.02, in turn, refer to monies collected pursuant to two other proposed new statutes, A.R.S. §§ 42-5010(H) and 42-5155(E), both of which provide for the one percent additional sales tax rate increment that the initiative would impose on certain business classifications specified in § 42-5010(A)(1).

¶21 The first paragraph of the Council's analysis, however, states that

> the sales tax base cannot be adjusted in a way that causes the amount of sales tax collected to be less than the amount collected in the prior year, plus six per cent, unless there is a corresponding change in the tax base that results in no reduction in the amount of sales tax collected.

The Council considered and rejected a proposed amendment that would have added the phrase "applicable to the one-cent sales tax" after the words "sales tax base." In addition, and particularly significant to us, the first sentence of the Council's analysis refers to "sales tax" as broadly meaning "the

13

transaction privilege tax and the use tax," without limiting it to the additional one percent sales tax that the initiative would impose.

¶22 The superior court ruled that the Council's analysis misleadingly suggested the Act would more broadly limit tax base adjustments and impermissibly amounted to "rhetorical strategy that tends to favor one side over the other." Although the issue is close, we agree.

¶23 Subsection (G) of proposed § 42-5029.02 is not a model of clarity. But it does not prohibit any and all adjustments to the sales tax base, as a whole, if the total amount of sales tax collected is less than the amount collected in the prior year, as the Council's analysis suggests. Rather, subsection (G) only limits changing the tax base in such a way as to cause a net reduction in the taxes collected under § 42-5029.02, that is, the initiative's new one percent sales tax.

¶24 As the Committee points out, the initiative bars the legislature from defunding the Act by manipulating the sales tax base related to taxes collected under the Act, but explicitly applies this restriction to only those taxes. Thus, changes affecting the tax base of the transient lodging and mining classifications, *see* A.R.S. § 42-5010(A)(2)-(3), business classifications not listed in § 42-5010(A)(1), would not impact the amount collected under proposed §§ 42-5010(H) or 42-5155(E)

14

and therefore could be changed without requiring an offset.

¶25        Subsection (G), contrary to the Council's analysis, prescribes the relationship between the tax base under Title 42, the tax code ("tax base"), and the amount collected and distributed "under this section [§ 42-5029.02]" ("amount collected"), meaning the one percent tax enacted by the initiative.   This provision forbids the legislature from adjusting the tax base to effect a reduction in that amount collected to be less than the amount collected and distributed (under this section) plus six percent.   The only exception is a reduction in the tax base (under this Title) offset by a change in the tax base (under this Title) that would either not change the amount collected (under this section) or increase it.

¶26        The Council's analysis instead describes subsection (G) as meaning "the sales tax base cannot be adjusted in a way that causes the amount of sales tax collected to be less than the amount collected in the prior year, plus six per cent, unless there is a corresponding change in the tax base that results in no reduction in the amount of sales tax collected." The analysis suggests that the overall sales tax can never be reduced, and total collections will need to be increased by six percent each year.   The provision says neither about the total sales tax.  By not modifying the phrase "the amount of sales tax collected" to make clear that it applies only to the

15

initiative's one percent tax, the analysis misleadingly suggests that the legislature may never adjust the sales tax base or reduce Arizona's sales tax. Subsection (G), however, would not affect the legislature's power to reduce Arizona's sales tax, as long as the portion affected by the change in the sales tax base is the 5.6 percent portion of the sales tax.

¶27 The Council's analysis does not accurately explain, in a neutral, evenhanded manner, the initiative's qualified limitation on adjustment of the sales tax base. Rather, the analysis overstates that limitation and, therefore, tends to mislead. Accordingly, the superior court did not err in ordering revision of that portion of the analysis.

¶28 Finally, the superior court did not err in upholding the Committee's challenge to a third aspect of the analysis. Section 4 of the initiative adds a new statute, A.R.S. § 15-1642.01, which would funnel a portion of the new tax revenues to scholarships for state university students. That new statute directs the Arizona Board of Regents to establish a scholarship fund, adopt rules to govern administration of the fund, and annually allocate monies from the fund "to provide scholarships to resident students based on financial need or academic achievement."

¶29 In its analysis of that provision, the Legislative Council added a sentence that says, "The proposition fails to

define who qualifies as a 'resident' for purposes of the scholarships." The superior court upheld the Committee's challenge to that statement, finding it not impartial. The court noted that the Council "singled out one undefined term for emphasis," even though many of the initiative's other terms are not defined, and "flag[ged]" a "highly controversial" issue by suggesting that public funds might be used "for scholarships for illegal immigrants," when the initiative itself neither requires nor suggests any such thing.

¶30 The Council correctly indicates that the challenged statement is accurate and that the analysis does not mention illegal immigration. But even accurate statements can be misleading, argumentative, "tinged with partisan coloring," or otherwise lack the impartiality § 19-124(B) requires. *Greene*, 180 Ariz. at 590, 886 P.2d at 1346 (quoting *Plugge*, 841 S.W.2d at 140).

¶31 The statement in question was added to the analysis only when a Council member offered an amendment at the public meeting. When the need for the amendment was questioned, concerns were expressed that, absent a definition of "resident," confusion might exist on whether "illegal aliens" could receive scholarships. The Council then adopted the amendment, including the word "fails," and rejected the following proposed wording change: "The Act does not define resident student."

17

**¶32** The initiative does not define many of its terms, such as "school district," "fiscal year," "tax base adjustments," and "increase in the amount collected." The Council's analysis, however, did not mention any of those definitional omissions. Rather, the Council selectively emphasized that the initiative does not define "resident" for student scholarship purposes and referred to that omission as a "fail[ure]," thereby suggesting that the initiative is flawed in that respect. The statement in question also overlooks several Arizona statutes that, at least implicitly, suggest that illegal immigrants would not qualify as "resident students" for scholarship purposes. *See* A.R.S. § 15–1626(A)(5) (2012) (directing Board of Regents to "differentiate" between "residents" and other categories of university students for purposes of setting tuition and fees); *id.* § 15–1803(B) (providing that "a person who was not a citizen or legal resident of the United States or who is without lawful immigration status is not entitled to classification as an in-state student pursuant to section 15–1802 or entitled to classification as a county resident pursuant to section 15–1802.01").

**¶33** The rather obvious purpose of the amended statement is to inject the contentious topic of illegal immigration into an already controversial tax measure and have voters infer from the statement that new tax revenues could be used for illegitimate

18

scholarship purposes because the initiative "fails" to define who qualifies as a "resident." On its face, the statement is true, but its inclusion and provocative phrasing belie neutrality and impermissibly advocate against the measure. *See CGM*, 199 Ariz. at 72 ¶ 6, 13 P.3d at 1189. The superior court did not err in upholding the Committee's challenge on this point.

## V.

**¶34** When Legislative Council analyses are challenged under § 19-124(B), we must evaluate them for statutory compliance, though we do so reluctantly and with reservation. As we have previously said, "[n]o member of this court has any particular fondness for these challenges." *Id.* at 73 ¶ 12, 13 P.3d at 1190. Nor can we "settle each of these disputes; our function is only to ensure that a challenged analysis is reasonably impartial and fulfills the statutory requirements." *Howe*, 192 Ariz. at 383 ¶ 17, 965 P.2d at 775.

**¶35** Determinations of impartiality are not always easy or clear-cut. Based on our existing case law, however, we cannot say that the superior court erred in finding the Legislative Council's analysis noncompliant with § 19-124(B)'s impartiality requirement in the three respects discussed above. We therefore accept jurisdiction of the special action but deny relief.

_____
A. John Pelander, Justice


CONCURRING:


_____
Scott Bales, Vice Chief Justice


_____
Robert M. Brutinel, Justice