NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

KEITH WALLACE, *Plaintiff/Appellee/Cross-Appellant*,

*v.*

CHRIS IRVING, et al., *Defendants/Appellants/Cross-Appellees*.

No. 1 CA-CV 24-0486

FILED 05-22-2025

Appeal from the Superior Court in Maricopa County
No. CV2020-054359
The Honorable Michael D. Gordon, Judge

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

COUNSEL

Law Office of Timothy M. Collier PLLC, Scottsdale
By Timothy M. Collier, William A. Weber
*Counsel for Plaintiff/Appellee/Cross-Appellant*

Dunn Desantis Walt & Kendrick LLP, Phoenix
By Justin V. Niedzialek
*Counsel for Defendants/Appellants/Cross-Appellees*

---

## MEMORANDUM DECISION

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Daniel J. Kiley and Judge David D. Weinzweig joined.

---

**C A T L E T T**, Judge:

¶1        Chris Irving ("Irving") and Aqua Spa and Pool, LLC ("Aqua Spa") (collectively, "Appellants") appeal the superior court's judgment vacating a jury verdict in Irving's favor and denying them attorney fees. Keith Wallace ("Wallace") cross-appeals the superior court's denial of a new trial. We reverse the judgment vacating the verdict in favor of Irving. We therefore remand for the court to determine whether Irving is now entitled to attorney fees and costs. We otherwise affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Wallace owned and operated Aqua Spa. In 2017, Wallace sold Irving a forty-nine percent ownership interest, leaving Wallace as the fifty-one percent owner. In February 2019, Wallace agreed to make Irving the sole owner. Wallace and Irving executed four agreements memorializing the deal, two of which were the Purchase Agreement and the Employment Agreement. Under the Purchase Agreement, Wallace sold Irving his fifty-one percent interest for $80,000, paid with a promissory note. The Employment Agreement said Aqua Spa would employ Wallace for five years, unless terminated earlier, and pay him $2,500 a month. The Employment Agreement had a non-compete provision and breaching it would automatically result in termination.

¶3        In May 2019, Aqua Spa's counsel sent Wallace a letter terminating his employment. It alleged Wallace breached the non-compete provision by operating a spa service in the Phoenix area. For that reason, Aqua Spa informed Wallace the Employment Agreement was terminated and "no more payments [would] be forthcoming." Irving also alleged Wallace violated the Purchase Agreement by not disclosing tax liability, so Irving would no longer pay the note.

¶4        In response, Wallace denied the allegations and demanded continuing compensation. Counsel for the parties exchanged emails. But

other than agreeing Irving would make certain payments on the note, the parties could not resolve their differences.

¶5   In July 2020, Wallace sued Appellants, alleging they breached the Employment Agreement and were unjustly enriched. Appellants counterclaimed for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, and unjust enrichment. Appellants also asserted Wallace's claims were time-barred because he was terminated on May 3, 2019, but did not file his complaint until July 2020, more than a year later.

¶6   The superior court held a jury trial, and the parties submitted almost all issues to the jury. But they submitted two issues to the court: whether Wallace's claims were untimely and whether Appellants were equitably estopped from asserting the statute of limitations. The jury returned four verdicts. One, it found Aqua Spa breached the Employment Agreement and awarded Wallace $13,241.69 ("the Wallace Jury Verdict"). Two, it found Wallace did not breach a contract with Irving. Three, it found Wallace committed fraud but awarded Irving nothing. And four, it found Wallace committed negligent misrepresentation and awarded Irving $13,241.69 ("the Irving Jury Verdict").

¶7   After the jury left, the court found Wallace's contract claims accrued on May 3, 2019, and were time-barred. The court also found Appellants were not estopped from asserting the statute of limitations. So the court vacated the Wallace Jury Verdict.

¶8   Wallace asked for judgment notwithstanding the verdict. He argued the court should vacate the Irving Jury Verdict because the jury did not follow the verdict form's instructions. Specifically, the verdict form for Irving's negligent misrepresentation claim instructed, "Do not use if you found in favor of Defendant/Counterclaimant Chris Irving for fraud." Because the jury signed the fraud and negligent misrepresentation verdict forms, Wallace argued he was entitled to judgment notwithstanding the verdict. The court directed Wallace to make that argument in writing. The court also ordered Appellants to file a form of judgment and apply for attorney fees after it resolved Wallace's motion.

¶9   Following the court's direction, Wallace moved in writing for entry of judgment under Arizona Rules of Civil Procedure ("Rules") 54 and 58. He argued the court "should vacate [the Irving Jury Verdict] for the Jury's failure to follow the instruction" on the verdict form. Appellants responded that the court could not vacate the Irving Jury Verdict and, even

if it could, Wallace waived any argument that the Verdict was defective by not asking the court to resubmit the claims to the jury using Rule 49.

**¶10**        Appellants proposed their own form of judgment awarding Irving $13,241.69 on his negligent misrepresentation claim. Appellants also requested attorney fees under the Employment and Purchase Agreements because they prevailed in a contract action. *See* A.R.S. § 12-341.01.

**¶11**        In its final judgment, the court vacated the Irving Jury Verdict under Rule 58. The court reasoned that Appellants "repeatedly took the position that [the negligent misrepresentation verdict form] should not be used if the Jury found fraud." The court thought that "Wallace adequately preserved and presented the issue to the Court's determination under Rule 58[.] Clearly, the jury intended that neither party be awarded damages for any of their claims." The court ordered that the parties take nothing on their claims and bear their own attorney fees.

**¶12**        Wallace sought a new trial under Rules 59(a)(1)(E) and (a)(1)(H). He argued the jury's verdict on Irving's fraud claim could not stand because it awarded Irving no damages. The court erred, he claimed, by vacating the Wallace Jury Verdict. The accrual date for his contract claim, he argued, was August 16, 2019, not May 2019, and, anyway, Aqua Spa should be estopped from using the statute of limitations. And finally, he believed the jury gave him insufficient damages for Aqua Spa's breach of contract. The court denied Wallace's motion.

**¶13**        Appellants appealed, Wallace cross appealed, and we have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.    The Irving Jury Verdict

**¶14**        Appellants argue the court could not vacate the Irving Jury Verdict for three reasons. First, Wallace waived any defect in that Verdict by not requesting to resubmit the case to the jury under Rule 49. Second, vacating that Verdict exceeded the court's authority under Rule 58. And third, the court improperly substituted its judgment for the jury's. Wallace responds that Rule 58 allowed the court to vacate the Irving Jury Verdict to conform it to the jury's intent to award no damages. We conclude the court could not vacate the Irving Jury Verdict using Rule 58.

**¶15**        We review *de novo* the interpretation and application of court rules. *See Chartone, Inc. v. Bernini*, 207 Ariz. 162, 167 ¶ 14 (App. 2004);

*Duckstein v. Wolf*, 230 Ariz. 227, 231 ¶ 8 (App. 2012). "[T]he plain meaning of the language" is "the most reliable indicator of the construction and meaning." *Phillips v. Garcia*, 237 Ariz. 407, 410 ¶ 9 (App. 2015). Misapplying the law is an abuse of discretion and reversible error. *Tobin v. Rea*, 231 Ariz. 189, 194 ¶ 14 (2013); *see also Chartone, Inc.*, 207 Ariz. at 172–73 ¶ 40–43.

**¶16** Rule 58 governs proposed forms of judgment, entering judgment, notifying parties when judgment is entered, and remittitur. *See* Ariz. R. Civ. P. 58(a)–(d). Some rules expressly allow a court to vacate or modify a jury verdict. *See* Ariz. R. Civ. P. 50(b); Ariz. R. Civ. P. 59(a)(1)(H). But Rule 58 does not. So that Rule did not allow the court to vacate the Irving Jury Verdict. *See Tobin*, 231 Ariz. at 194 ¶ 14.

**¶17** Because the court could not use Rule 58 to vacate the Irving Jury Verdict, we need not address whether Wallace should have asked to resubmit the case to the jury under Rule 49. But even if we overlook the court's reliance on Rule 58, it should not have vacated the Irving Jury Verdict because that Verdict was not manifestly irregular or defective. *See Smith v. Tang*, 100 Ariz. 196, 202 (App. 1966) ("Where a verdict is manifestly irregular or defective the trial court may put the verdict in such form as to conform to the intention of the jury, when the intention can be ascertained with certainty."). The superior court thought that "[c]learly, the jury intended that neither party be awarded damages for any of their claims." But that intent cannot "be ascertained with certainty" from the jury's verdict forms. *Id.* It is doubtful—let alone certain—that the jury intended that neither party get damages when it awarded both damages. After the verdicts, Wallace's contract claim faced the statute of limitations, but Irving's negligent misrepresentation claim did not. The natural consequence of the court's statute of limitations ruling was that Wallace could no longer press a breach of contract claim. One can only guess what the jury might have done with Irving's negligent misrepresentation claim knowing Wallace could not press a breach of contract claim. And that uncertainty means the court should not have vacated the Irving Jury Verdict. We reverse the judgment doing so and instruct the court to reinstate that Verdict.

## II. Wallace's Cross Appeal

**¶18** Wallace argues the court erred by denying him a new trial because: (1) the jury's verdict on Irving's fraud claim was contrary to law; (2) the evidence did not support the court's conclusions about the accrual date for Wallace's claim and equitable estoppel; and (3) the jury awarded insufficient damages on his breach of contract claim. *See* Ariz. R. Civ. P.

59(a)(1)(E), (a)(1)(H). We will not order a new trial "absent a clear abuse of discretion." *Delbridge v. Salt River Project Agric. Improvement & Power Dist.*, 182 Ariz. 46, 53 (App. 1994).

### A.    Irving's Fraud Claim

**¶19**        Wallace first argues the court should have vacated the jury's verdict on Irving's fraud claim because the jury could not find for Irving "while finding zero damages[.]"

**¶20**        Wallace lacks standing to make that argument. Wallace was neither aggrieved nor materially affected by the court's judgment. *See* Ariz. R. Civ. App. P. 1(d); *Waid v. Bergschneider*, 94 Ariz. 21, 24 (1963) ("[A] new trial should be granted *only* for a cause materially affecting the rights of the aggrieved party."); *see also Miller v. Palmer*, 143 Ariz. 84, 86 (App. 1984). Although the verdict form said the jury found in favor of Irving on his fraud claim, it awarded no damages. Damages are required for a fraud claim, so the court correctly entered judgment for Wallace. S*ee Aaron v. Fromkin*, 196 Ariz. 224, 227, ¶ 13 (App. 2000) (listing damages as one of the nine necessary elements of common-law fraud). The verdict form, on its own, does not make Wallace an aggrieved party when the final judgment later resolved Irving's fraud claim in Wallace's favor. *See Compass Realty & Inv. Corp. v. A A Refrigeration & Heating, Inc.*, 21 Ariz. App. 214, 216 (1974) ("Mere disappointment with a particular result does not constitute aggrievement sufficient to support an appeal.").

### B.    Accrual and Equitable Estoppel

**¶21**        Wallace next argues the accrual date for his breach of contract claim was August 16, 2019, the date settlement discussions broke off, not May 3, 2019, the date he received the termination letter. We disagree.

**¶22**        "[O]ur legislature has determined that claims must be brought within an identifiable period of time, and claims brought thereafter are, absent certain circumstances, too stale to be enforceable." *Porter v. Spader*, 225 Ariz. 424, 427 ¶ 7 (App. 2010); *see also Brooks v. S. Pac. Co.*, 105 Ariz. 442, 444 (1970). Arizona law imposes a one-year limitations period in actions "[f]or breach of an oral or written employment contract[.]" A.R.S. § 12-541(3). And that period begins "when one party is able to sue another." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 588 (1995). So a claim for breaching an employment contract ordinarily accrues when the contract is breached. *See Angus Med. Co. v. Digit. Equip. Corp.*, 173 Ariz. 159, 162 (App. 1992).

¶23 At trial, all parties agreed the Employment Agreement is an employment contract. Wallace's claim therefore accrued when he knew Aqua Spa allegedly breached that Agreement. This occurred on May 3, 2019, when Aqua Spa notified Wallace that it was terminating his employment and "no more payments [would] be forthcoming." In both deposition and trial testimony, Wallace admitted he was "fully aware" that Aqua Spa terminated his employment as of May 3, 2019. So we agree with the court's conclusion that Wallace's claim accrued on May 3, 2019.

¶24 Wallace also argues that, even if his claim accrued on May 3, 2019, the court erred by concluding Aqua Spa was not estopped from asserting the statute of limitations. For equitable estoppel, Wallace had to show that (1) specific promises, threats, or inducements by Aqua Spa prevented him from filing suit; (2) Aqua Spa's conduct caused his failure to timely file suit; (3) Aqua Spa's conduct reasonably could be expected to induce forbearance; and (4) he brought the action a reasonable time after Aqua Spa terminated its conduct warranting estoppel. *See Nolde v. Frankie*, 192 Ariz. 276, 281 ¶ 20 (1998).

¶25 Wallace argues that emails between counsel about mediation caused his filing delay. But, at best, those communications reflect the parties' attempt to settle or mediate their dispute. As Appellants point out, the "mere conduct of settlement negotiations does not estop the defendant from pleading the statute of limitations." *Kelley v. Robison*, 121 Ariz. 229, 230 (App. 1978). The court correctly concluded that Aqua Spa was not estopped from asserting the statute of limitations.

¶26 Because the court correctly concluded Wallace filed his breach of contract claim too late, we need not address whether the jury awarded him insufficient damages for that claim.

### III. Attorney Fees

#### A. In the Superior Court

¶27 Appellants argue the superior court should have awarded them attorney fees. After vacating the Irving Jury Verdict, the court did not award attorney fees and costs to any party because it thought no one prevailed. The superior court did not abuse its discretion in not awarding attorney fees or costs to Aqua Spa. *See Wistuber v. Paradise Valley Unified Sch. Dist.*, 141 Ariz. 346, 350 (1984) (explaining the court of appeals does not substitute its judgment for the trial court's in not awarding attorney fees).

**¶28** But we have concluded the court could not vacate the Irving Jury Verdict. *See supra* ¶ 17. So, before entering an amended judgment, the superior court should consider whether Irving is now entitled to attorney fees and costs under A.R.S. § 12-341.01(A) or the parties' agreements. We take no position on that question.

### B. On Appeal

**¶29** Both Wallace and Appellants request attorney fees and costs on appeal. We decline Wallace's request because he has not prevailed. *See supra* ¶¶ 22, 27, 29. We also decline Appellants' request for attorney fees because they did not follow the procedural requirements for requesting fees. *See* Ariz. R. Civ. App. P. 21(a)(2); *Olewin v. Nobel Mfg., LLC*, 254 Ariz. 346, 354 ¶ 32 (App. 2023). As prevailing parties, Appellants are entitled to costs on appeal under A.R.S. § 12-341 once they comply with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

**¶30** We reverse the superior court's judgment vacating the Irving Jury Verdict and instruct it to enter judgment for Irving consistent with that Verdict. But before doing so, the court should redetermine whether Irving is entitled to attorney fees. We otherwise affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:　　　　JR