SUPREME COURT OF ARIZONA

QUALITY EDUCATION & JOBS ) Arizona Supreme Court
SUPPORTING I–16–2012, a ) No. CV-12-0286-AP/EL
registered Arizona Political )
Committee, )
) Maricopa County
) Superior Court
       Plaintiff/Appellant, ) No. CV2012-011232
)
           v. )
)
KEN BENNETT, Arizona Secretary ) **O P I N I O N**
of State and THOMAS HORNE, )
Arizona Attorney General, both )
in their official capacities, )
)
       Defendants/Appellees.)
)
_____)

Appeal from the Superior Court in Maricopa County
The Honorable John Christian Rea, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**
_____

TORRES LAW GROUP                                  Phoenix
    By   James E. Barton II
Attorney for Quality Education & Jobs Supporting I-16-2012
Committee

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL            Phoenix
    By   Michele L. Forney, Assistant Attorney General
Attorney for Ken Bennett and Thomas C. Horne
_____

**P E L A N D E R**, Justice

**¶1**      Quality Education & Jobs Supporting I–16–2012 ("the

Committee") challenged the Secretary of State's descriptive

title and "yes/no" language used for that initiative

("Proposition 204" or "the Act") in the Secretary's voter

information guide and ballot for the November 2012 general election. The superior court rejected that challenge, finding the language was "not arbitrary or unquestionably inaccurate" and therefore substantially complied with A.R.S. § 19-125(D) (2012). On August 28, 2012, we issued an order treating the Committee's appeal from that ruling as an appellate special action, accepting jurisdiction but denying relief. This opinion explains our reasoning.[1]

## I.

¶2 The Committee filed this matter as an "expedited election appeal," contending that it could be filed directly in this Court pursuant to Rule 8.1(h) of the Arizona Rules of Civil Appellate Procedure. That rule, however, "applies only to election-related cases designated by statute for expedited consideration on appeal." ARCAP 8.1 cmt. 1. This case does not fall within that category. Neither § 19-125(D), on which the Committee's challenge was based, nor any other statute authorizes an expedited appeal to this Court in this context. Accordingly, we treat the matter as a special action and accept jurisdiction because the purely legal issue raised is of statewide importance, and there is no "equally plain, speedy,

---

[1]  On November 6, 2012, the voters rejected Proposition 204. Ariz. Sec'y of State, *State of Arizona Official Canvas* 18 (Dec. 3, 2012), *available at* www.azsos.gov/election/2012/General/Canvass2012GE.pdf.

and adequate remedy by appeal." Ariz. R. P. Spec. Act. 1(a);
*see Ariz. Legislative Council v. Howe*, 192 Ariz. 378, 382 ¶ 10,
965 P.2d 770, 774 (1998).

## II.

**¶3** Proposition 204's background is set forth in our opinion in *Tobin v. Rea*, No. CV-12-0273-SA (Jan. 17, 2013), also filed today. In short, the Committee and its supporters collected approximately 290,000 signatures to place the initiative on the 2012 general election ballot as Proposition 204. The Secretary prepared a descriptive title and summary of the measure's principal provisions pursuant to § 19-125(D), which states, in relevant part:

> There shall be printed on the official ballot immediately below the number of the measure and the official title of each measure a descriptive title containing a summary of the principal provisions of the measure, not to exceed fifty words, which shall be prepared by the secretary of state and approved by the attorney general and that includes the following or the ballot shall comply with subsection E of this section:
>
> A "yes" vote shall have the effect of _____.
>
> A "no" vote shall have the effect of _____.
>
> The blank spaces shall be filled with a brief phrase, approved by the attorney general, stating the essential change in the existing law should the measure receive a majority of votes cast in that particular manner. In the case of a

3

referendum, a "yes" vote shall have the effect of approving the legislative enactment that is being referred. The "yes" and "no" language shall be posted on the secretary of state's website after being approved by the attorney general and before the date on which the official ballots and the publicity pamphlet are sent to be printed.

A.R.S. § 19-125(D).

¶4 After consulting with the Attorney General and receiving input from the initiative's proponents, the Secretary settled on the following language for the general election guide (or "publicity pamphlet") and ballot:

**Proposition _____**
**PROPOSED BY INITIATIVE PETITION RELATING TO TAXATION.**
[I-16-2012]

EFFECTIVE JUNE 1, 2013, PERMANENTLY INCREASES THE STATE SALES TAX BY ONE CENT PER DOLLAR FOR THE PURPOSE OF FUNDING EDUCATIONAL PROGRAMS, PUBLIC TRANSPORTATION INFRASTRUCTURE PROJECTS, AND HUMAN SERVICES; FORBIDS REDUCTIONS TO CURRENT K-12 AND UNIVERSITY FUNDING LEVELS; AND FORBIDS REDUCTIONS TO THE CURRENT STATE SALES TAX BASE.

A "yes" vote shall have the effect of permanently increasing the state sales tax by one cent per dollar, effective June 1, 2013, for the purpose of funding educational programs, public transportation infrastructure projects, and human services. It forbids reductions to current K-12 and university funding levels and forbids reductions to the current state sales tax base.

A "no" vote shall have the effect of not increasing the state sales tax by one cent per one dollar, beginning June 1, 2013.

¶5 The Committee argues that the Secretary's description violates § 19-125(D) by "falsely characterizing the Act as a tax

4

increase" and "exaggerating the limitation on the Legislature contained in the Act." The Committee's preferred language would have stated that the Act "replac[es] the temporary one cent per dollar sales tax set to expire on June 1, 2013 with a permanent one-cent sales tax," and "forbids reductions to the current sales tax base applicable to the one-cent sales tax." The Committee further contends that the superior court erred by failing to apply "the same substantial compliance review that Arizona courts apply to the Legislative Council's analysis" under A.R.S. § 19-124(B) (2012). We are not persuaded.

¶6        Of the cases the Committee cites, only *Howe* involved a challenge to the Secretary of State's descriptive title and "yes/no" language used in the publicity pamphlet and ballot regarding a referendum proposal. There, the superior court concluded that the Secretary "failed to comply with A.R.S. § 19-125" in those respects. *Howe*, 192 Ariz. at 382 ¶ 8, 965 P.2d at 774. In overturning that ruling, this Court found that the Secretary substantially complied with the statutory requirements by using language that "can reasonably be regarded as an attempt to provide necessary and appropriate information to the voting public." *Id.* at 384 ¶ 22, 965 P.2d at 776. "Giving due deference" to the Secretary, we could not say that the chosen language was, "as a matter of law, so overemphasized as to be misleading, inaccurate, lacking in neutrality, or

5

argumentative." *Id.* ¶ 19.[2]

**¶7**     We reach the same conclusions here regarding the Secretary's descriptive title and "yes/no" language used for Proposition 204.  We agree with the Committee that the Secretary may not use language that is false or clearly misleading.  But we disagree with the Committee's assertion that the Secretary's description of the Act "as a tax increase is unquestionably inaccurate."  As noted in *Tobin*, "[t]hough 'fairly debatable,' . . . the initiative's proposed tax may fairly be described as a 'new' or additional 'tax increase,'" and such a description "is neither inaccurate nor partial."  Slip op. at 11 ¶ 17 ("[T]he initiative proposes statutory changes that would impose a new, permanent, and legislatively unalterable tax, the revenues of which would be directed to different and broader uses than those under the current, constitutionally-imposed temporary tax.").

**¶8**     In *Tobin*, we required modification of the Legislative Council's analysis not because it characterized the Act as imposing a new tax increase, but only because it did not satisfy § 19-124(B)'s impartiality requirement, as explicated in this Court's case law.  Absent any explanatory context, the Council's analysis was "not completely 'free from any misleading

---

[2]     For the same reasons, we rejected the challenge under A.R.S. § 19-124(B) to the Legislative Council's analysis of the referendum proposal.  *Howe*, 192 Ariz. at 384 ¶¶ 18-20, 22, 965 P.2d at 776.

6

tendency.'" *Id.* ¶ 18 (quoting *Fairness & Accountability in Ins. Reform v. Greene*, 180 Ariz. 582, 590, 886 P.2d 1338, 1346 (1994)). Accordingly, the analysis could not be viewed as "a completely neutral summary, without advocacy or argument." *Id.* slip op. at 12 ¶ 19 (quoting *Citizens for Growth Mgmt. v. Groscost*, 199 Ariz. 71, 73 ¶ 11, 13 P.3d 1188, 1190 (2000)). Nor did it lack any hint of "partisan coloring." *Id.* slip op. at 9 ¶ 13 (quoting *Greene*, 180 Ariz. at 590, 886 P.2d at 1346).

**¶9** The statute at issue here, § 19-125(D), does not expressly require an "impartial analysis" of the proposed measure, as does § 19-124(B). And although the Legislative Council's analysis "shall be written in clear and concise terms," it is not subject to any word or page limit. A.R.S. § 19-124(B). In contrast, the Secretary is obligated to summarize, in no more than fifty words, "the principal provisions of the measure," followed by a "brief phrase . . . stating the essential change in the existing law" should the measure be approved. *Id.* § 19-125(D). The measure here, Proposition 204, spanned fourteen single-spaced pages and contained detailed and relatively complicated language regarding state sales tax and related provisions. The length and complexity of the initiative, and the constraints prescribed in § 19-125(D), are factors in assessing compliance with that statute.

7

¶10    The Committee aptly notes that, compared to the Council's analysis, the Secretary's ballot language arguably is more important because it might be the last or only description the electorate sees before voting on the measure. But given the different requirements and purposes of §§ 19-124 and 19-125, we are disinclined to equate the statutory standards or import wholesale our jurisprudence relating to the former statute in interpreting the latter. Although § 19-125(D) does not permit the Secretary to use false or clearly misleading language, the "tax increase" language he used in the publicity pamphlet and ballot cannot be characterized as such.

¶11    We likewise do not find false or clearly misleading the Secretary's statement that the Act "forbids reductions to the current state sales tax base."[3] The Committee challenges that language as incorrectly "describ[ing] a measure that prohibits altering a portion of the tax base as prohibiting altering the entire tax base." According to the Committee, the Secretary's "yes/no" language suggests that the Act "limits all alterations to the tax base" and, therefore, violates the statutory requirement by failing to "stat[e] the essential change in the existing law should the measure receive a majority

---

[3]    The Committee does not challenge as inaccurate or misleading the Secretary's statement that the Act "forbids reductions to current K-12 and university funding levels."

8

of votes cast in that particular manner." A.R.S. § 19-125(D).

**¶12** As with the Secretary's "tax increase" language to which the Committee objects, the meaning of his "sales tax base" language is fairly debatable and potentially subject to differing interpretations. But that does not mean the language fails to comply with § 19-125(D). The Secretary's summary begins by stating that the Act "permanently increases the state sales tax by one cent per dollar." In context, the language that follows, regarding the "current state sales tax base" to which the Act forbids reductions, could be read as referring to the aforementioned "one cent per dollar" portion of the sales tax base.[4] Our task is not to determine whether that is the only, or even the most reasonable, interpretation of the language used. Rather, because the Secretary's language is neither false nor clearly misleading, and because it "can reasonably be regarded as an attempt to provide necessary and appropriate information to the voting public," we find that it substantially complies with § 19-125(D). *Howe*, 192 Ariz. at

---

[4] In *Tobin*, although we found the issue "close," the Legislative Council was required to modify its description of restrictions on adjusting the sales tax base. Slip op. at 14 ¶ 22. But we found "particularly significant" that "the Council's analysis refer[red] to 'sales tax' as broadly meaning 'the transaction privilege tax and the use tax,' without limiting it to the additional one percent sales tax that the initiative would impose." *Id.* slip op. at 13-14 ¶ 21. No such misleading and fatal flaw appears in the Secretary's language at issue here.

384 ¶ 22, 965 P.2d at 776.

## III.

**¶13**     We have no more appetite for enmeshing ourselves in quarrels regarding the Secretary's compliance with § 19-125(D) than in disputes over the Council's compliance with § 19-124(B). As the superior court correctly observed regarding the areas of contention here, however, the parties each raised "legitimate points," and neither side's position "is irrational or frivolous." The court did not abuse its discretion or otherwise err in finding that the Secretary's language substantially complies with § 19-125(D). *See* Ariz. R. P. Spec. Act. 3(c). Accordingly, we accept special action jurisdiction but deny relief.

_____
A. John Pelander, Justice

CONCURRING:


_____
Scott Bales, Vice Chief Justice


_____
Robert M. Brutinel, Justice