IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

WILLIAM JAMES LANE, et al., *Plaintiffs/Appellants*,

*v.*

CITY OF SCOTTSDALE, et al., *Defendants/Appellees.*

No. 1 CA-CV 24-0545 EL
FILED 10-22-2024

---

Appeal from the Superior Court in Maricopa County
No. CV2024-015767
The Honorable Michael D. Gordon, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

---

COUNSEL

Scharf-Norton Center for Constitutional Litigation
at the Goldwater Institute, Phoenix
By Jonathan Riches, Scott Day Freeman, Adam Shelton
*Counsel for Plaintiffs/Appellants*

Sherman & Howard L.L.C., Phoenix
By Craig A. Morgan, Shayna Stuart, Jake T. Rapp
*Counsel for Defendants/Appellees City of Scottsdale*

Coppersmith Brockelman PLC, Phoenix
By D. Andrew Gaona, Austin C. Yost
*Counsel for Amicus Curiae Vote Yes-Yes*

Timothy A. La Sota, PLC, Phoenix
By Timothy A. La Sota
*Counsel for Amicus Curiae David Smith*

League of Arizona Cities and Towns, Phoenix
By Nancy L. Davidson
*Counsel for Amicus Curiae AZ Cities/Towns*

---

**OPINION**

Acting Presiding Judge Anni Hill Foster delivered the opinion of the Court, in which Judge Samuel A. Thumma and Judge Michael S. Catlett joined. Judge Michael S. Catlett also delivered a separate special concurrence.

---

**F O S T E R**, Judge:

¶1        This case arises from defendant City of Scottsdale ("City") seeking to refer a measure to its voters in the upcoming November 2024 general election and a dispute over the ballot language approved by the City. Plaintiffs William Lane, Yvonne Cahill and Susan Wood ("Residents") appeal the superior court's dismissal of their suit and the denial of their request for preliminary and permanent injunctive relief to prevent the measure from appearing on the ballot. Treating the appeal as a special action rather than an expedited election appeal, this Court accepts special action jurisdiction and grants relief.

**FACTS AND PROCEDURAL HISTORY**

¶2        In 1995, Scottsdale residents voted to increase the City's transaction privilege and use taxes by 0.20% for 30 years to purchase land for the McDowell Sonoran Preserve. This 0.20% tax is a portion of the City's

2

current Transaction Privilege and Use Tax rate of 1.75%. It expires June 30, 2025.

¶3          In April 2024, the Scottsdale City Council approved the following language to be referred to the voters:

> **OFFICIAL TITLE: A CITY CODE AMENDMENT TO REPLACE AND REDUCE SCOTTSDALE'S EXPIRING TRANSACTION PRIVILEGE AND USE TAX RATE TO FUND: 1) IMPROVEMENTS AND MAINTENANCE FOR CITYWIDE PARKS AND RECREATIONAL FACILITIES; 2) MAINTENANCE AND PROTECTION FOR THE MCDOWELL SONORAN PRESERVE; AND 3) INCREASED POLICE AND FIRE RESOURCES RELATED TO CITYWIDE PARKS AND THE PRESERVE.**

> **DESCRIPTIVE TITLE:** Authorizes the City to replace and reduce the current 0.20% transaction privilege and use tax rate, expiring in 2025, to 0.15%, for 30 years to fund the improvement, maintenance, and protection of Citywide Parks and Recreational Facilities, and the maintenance and protection of the Preserve as determined by ordinance.

> A "**YES**" vote shall have the effect of authorizing the City to replace and reduce the current 0.20% transaction privilege and use tax rate, expiring in 2025, to 0.15%, for 30 years, effective July 1, 2025, for the purpose of: 1) improvements and maintenance for Citywide Parks and Recreational Facilities; 2) maintenance and protection for the McDowell Sonoran Preserve; and 3) increased Police and Fire resources related to Citywide Parks and the Preserve, with all being more specifically determined by City ordinance.

> A "**NO**" vote shall have the effect of denying the City the authority to replace and reduce the current 0.20% transaction privilege and use tax rate, expiring in 2025, to 0.15%, for 30 years, effective July 1, 2025, for the purpose of: 1) improvements and maintenance for Citywide Parks and Recreational Facilities; 2) maintenance and protection for the McDowell Sonoran Preserve; and 3) increased Police and Fire resources related to Citywide Parks and the Preserve.

The City also approved the following Tagline Text, to be printed on the ballot:

**SHALL SCOTTSDALE'S CURRENT 0.20% TRANSACTION PRIVILEGE AND USE TAX RATE, EXPIRING JUNE 30, 2025, BE REPLACED AND REDUCED TO 0.15% FOR 30 YEARS TO FUND IMPROVEMENTS, MAINTENANCE, AND INCREASED POLICE AND FIRE PROTECTION OF CITYWIDE PARKS, RECREATIONAL FACILITIES, AND THE PRESERVE AS DETERMINED BY CITY ORDINANCE?**

¶4          In June 2024, Residents sued the City, its officials and Maricopa County[1] seeking to prevent the proposition from appearing on the ballot. Residents raised three claims: misleading ballot description (Count 1), use of city funds to influence vote on proposed measure (Count 2) and due process and fundamental fairness (Count 3). Residents also sought preliminary and permanent injunctive relief.

¶5          The City moved to dismiss for failure to state a claim upon which relief could be granted. Treating the case as an expedited election matter, the superior court ordered expedited briefing and set oral argument on Residents' motion for preliminary and permanent injunction and the City's motion to dismiss. After a consolidated oral argument and without taking testimony, the court granted the City's motion to dismiss, denied injunctive relief and dismissed the complaint with prejudice. The superior court relied on *Molera v. Hobbs*, 250 Ariz. 13, 19, ¶ 9 (2020), to conclude the measure complied with A.R.S. § 19-101. More specifically, the superior court found the proposition's description "neither communicates objectively false or misleading information nor does it obscure the principal provisions' basic thrust . . . . While there may be better ways to describe the measure it is not confusing or misleading."

¶6          Residents timely appealed as an expedited election matter pursuant to A.R.S. § 19-161(B) and Arizona Rule of Civil Appellate Procedure 10(b). Following briefing and oral argument, this Court issued an order accepting jurisdiction and granting relief by permanently enjoining the City from including the referral, as written, on the ballot. The order stated that the Court would issue an opinion further explaining its reasoning. This is that opinion.

## DISCUSSION

¶7          At the Arizona Rule of Civil Appellate Procedure 10(g) scheduling conference, the parties limited the issues on appeal to Count 1—

---

[1] Maricopa County is a nominal, results-only defendant in this case.

the misleading ballot description and related injunctive relief. Residents argue that the superior court erred by (1) finding that the proposition's description was not misleading and (2) denying injunctive relief to keep the proposition off the ballot.

## I.     This Court may exercise jurisdiction.

¶8     As a preliminary matter, this Court may only decide cases when it has jurisdiction. Ariz. Const. art. 6, § 9; *Garza v. Swift Transp. Co., Inc.*, 222 Ariz. 281, 283, ¶ 12 (2009). Statutory authority is required for appellate jurisdiction over a putative expedited election challenge. *Quality Educ. & Jobs Supporting I-16-2012 v. Bennett*, 231 Ariz. 206, 206–07, ¶ 2 (2013); Ariz. R. Civ. App. P. 10 cmt. 1. The parties have stated the statutes applicable here are A.R.S. §§ 19-101 (referendum petition), -125 (form of ballot), -161 (challenges to legislative referenda) and -141 (initiative and referendum in cities). But it is unclear whether these statutes grant appellate jurisdiction. *Quality Educ.*, 231 Ariz. at 207, ¶ 2.

¶9     When presented with a timely notice appeal but where appellate jurisdiction may be lacking, this Court may treat the putative notice of appeal as a petition seeking special action jurisdiction. *See State v. Bayardi*, 230 Ariz. 195, 197-98, ¶ 7 (App. 2012). This Court then has the discretion to accept jurisdiction when there is no "equally plain, speedy, and adequate remedy [on] appeal." *Id.* (quoting Ariz. R.P. Spec. Act. 1(a)). In doing so, it is beyond the purview of the judiciary to interfere in matters delegated to the legislative branch such as determining "what" policy should be adopted; the judiciary's role though is to determine whether the process for adopting policy meets statutory requirements. *Tilson v. Mofford*, 153 Ariz. 468, 470 (1987). Because there is no "equally plain, speedy, and adequate remedy on appeal" and the question concerns "how" policy is being made, not the merits of any particular policy, it is appropriate for this Court to exercise special action jurisdiction. Ariz. R.P. Spec. Act. 1(a). This Court, in the exercise of its discretion, treats Residents' appeal as seeking special action relief and accepts special action jurisdiction. *See* A.R.S. § 12-120.21(A)(4); Ariz. R.P. Spec. Act. 1(a).

## II.    The applicable legal standard.

¶10     A superior court's dismissal for failure to state a claim is reviewed *de novo*. *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012).

¶11     State law establishes the process for preparing ballot language describing measures referred to voters, including legislative referrals. *See* A.R.S. § 19-125(C), (D). The statute contemplates this process

at the state level, but § 19-141 renders § 19-125 applicable to "cities, towns and counties" and delegates tasks to the appropriate officials requiring that the procedure for municipal elections "be as nearly as practicable the same as the procedure relating to initiative and referendum provided for the state at large." A.R.S. § 19-141(A), (D). Thus, the city or town clerk is responsible for drafting the ballot language, and the city attorney approves it. *See* A.R.S. § 19-141(A).

¶12        Once the clerk drafts the language and the relevant attorney approves it, the language is ready for the ballot pending any legal challenges that may arise. *See* A.R.S. §§ 19-125(D), -141(A). This process is quite different though than those initiated or referred by voters, which start with petitions and signature gathering. *See* A.R.S. § 19-101. Here, the City was authorized to refer the proposition directly to its citizens pursuant to its charter and was required to comply with § 19-125. Scottsdale City Charter, art. 10, § 1 ("All city matters on which the council is or shall be empowered to legislate may be submitted . . . to the electors . . . with the same force and effect as matters submitted on petition."); *see also* A.R.S. § 42-6006 (authorizing municipalities to submit issues relating to transaction privilege tax to qualified electors). Residents challenge the language approved through this process.

¶13        In dismissing Residents' case, the superior court relied on §§ 19-101(A) (standards "for referring to the people by referendum petition[2]") and -102(A) (standards for a "petition for a law or amendment to . . . city or town ordinance . . . proposed by the initiative") as the governing law requiring ballot propositions to include a measure's "principal provisions." The court also relied on *Molera,* 250 Ariz. at 19, ¶ 9, finding that "Arizona law does not require the description to be impartial and its sponsor, in this case the City, 'may cast the description in broad terms.'" But §§ 19-101 and -102 regulate the form for *petitions* when citizens attempt to refer previously passed legislation to the ballot or initiate legislation—not a law submitted to the voters by a legislative body. Similarly, *Molera* interpreted a fact scenario under § 19-102 and the court's view of citizens' ability to enact law. 250 Ariz. at 18–19, ¶¶ 3–5. That is not

---

[2] An "initiative" is when voters propose to enact or amend a law. Ariz. Const., art. 4., § 1(2). A "referendum" is when voters seek to refer a law passed by a legislative body to the ballot as a form of veto. Ariz. Const., art. 4., § 1(3). A "referral" is when a legislative body sends proposed legislation to its electorate for ratification. *See W. Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 428 (1991) (distinguishing "voter-initiated referenda" from "[r]eferral by the Legislature" of "proposed legislation to the electorate").

the situation here because this was not an initiative or referendum under §§ 19-101 or -102. Unlike *Molera* and its progeny, no petition was involved. Sections 19-101 and -102 do not apply.

**¶14** Instead, Residents' challenge to the proposed ballot language is governed by § 19-125. When a city refers a measure to its voters, the descriptive title must "contain a summary of the principal provisions of the measure, not to exceed fifty words" and the "YES" and "NO" language must "stat[e] the essential change in the existing law should the measure receive a majority of votes cast in that particular manner." A.R.S. § 19-125(D); A.R.S. § 19-141(A). Although the parties appear to assert that the standards under §§ 19-101 and -102 are either the same as, or substantially similar to those under § 19-125, this case implicates the latter not the former; *Molera* is instructive at best.

**¶15** *Quality Education*, not *Molera*, is the governing case on § 19-125. *Quality Educ.*, 231 Ariz. at 206–07, ¶¶ 1, 4. In *Quality Education*, the Supreme Court reviewed ballot language summarizing a statewide initiative proposing changes to the state sales tax. *Id.* The challenge alleged the descriptive title and summary drafted by the Secretary of State were false and misleading because they described the measure as a tax increase. *Id.* at 207–08, ¶ 5. The challenger's preferred language described the initiative as "replac[ing] the temporary one cent per dollar sales tax set to expire on June 1, 2013." *Id.* The Supreme Court held the description provided by the neutral Secretary of State was not false or misleading, stating the description was "fairly . . . described as a new or additional tax increase." *Id.* at 208, ¶ 7 (cleaned up).

**¶16** *Quality Education* also held that proper ballot language must be "neither false nor clearly misleading," and should "reasonably be regarded as an attempt to provide necessary and appropriate information to the voting public." *Id.* at 209, ¶ 12 (quoting *Ariz. Legis. Council v. Howe*, 192 Ariz. 378, 384, ¶ 22 (1998)) (establishing the standards for ballot language referred to voters by legislative body). Conversely, *Molera* concerned petition language, not ballot language. Ballot language is "important because it might be the last or only description the electorate

sees before voting on the measure" and therefore must be "free from any misleading tendency." *Quality Educ.*, 231 Ariz. at 208, ¶ 10.[3]

**¶17**        Courts serve as a backstop to ensure that the resulting language is not "misleading, inaccurate, lacking in neutrality, or argumentative." *Id.* at ¶ 6 (quoting *Howe*, 192 Ariz. at 384, ¶ 19). A court's "task is not to determine whether [the proposed descriptive text] is the only, or even the most reasonable, interpretation of the language used," *Quality Educ.*, 231 Ariz. at 209, ¶ 12, it is to determine "whether reasonable minds could conclude that the [City] met the requirements of the law, not whether . . . the judicial system could itself devise a better [description]," *Tobin v. Rea*, 231 Ariz. 189, 193, ¶ 11 (2013) (quoting *Howe*, 192 Ariz. at 383, ¶ 17). Here, the question is whether the proposed ballot language, "as a matter of law, [is] so overemphasized as to be misleading, inaccurate, lacking in neutrality, or argumentative." *Quality Educ.*, 231 Ariz. at 208, ¶ 6 (quoting *Howe*, 192 Ariz. at 384, ¶ 19).

## III.    The term "replace" is not misleading.

**¶18**        Residents focus on the Descriptive Title's phrase "replace and reduce," arguing that both terms are "deceptive and objectively false" and "the ballot language engages in 'bait and switch' because it obscures what [is] really going on."

**¶19**        Residents make two arguments that the term "replace" is misleading. First, they contend that the current tax will expire before the proposed measure becomes effective, so nothing can be replaced. Although this Court does not end its analysis with a term's definition, definitions are useful starting points. *See Burns v. Ariz. Pub. Serv. Co.*, 254 Ariz. 24, 30–31, ¶ 25 & n.1 (2022) (using dictionary definition to interpret Arizona Constitution provision but narrowing the applicable definition based on context). "Replace" may mean "[t]o take the place of or fill the role of" or

---

[3] Cases applying A.R.S. § 19-125 typically involve a process where a statement by the Arizona Secretary of State (not the entity seeking passage of the ballot measure) drafted the descriptive language for inclusion on the ballot. *See Quality Educ.*, 231 Ariz. at 207, ¶¶ 3-4. In that distinguishable context, courts afford "due deference" to such descriptions because the Secretary is viewed as a separately elected neutral party. *See id.* at 208, ¶ 6 (quoting *Howe*, 192 Ariz. at 384, ¶ 19 (1998)). Here, by contrast, the City has both referred the tax measure and approved the ballot language describing it. This Court need not decide the amount of deference due in this situation because, even giving deference, the proposed ballot language is misleading.

"[t]o provide a substitute for." *Replace*, The American Heritage Dictionary of the English Language (5th ed. 2011). Thus, the definition of "replace" does not resolve the matter in Residents' favor. In analyzing this definition though, Residents' second argument that the proposed tax serves a different purpose (providing city services) than the current tax (purchasing land), and is therefore not a replacement, must be addressed.

¶20        The following was the purpose listed on the 1995 ballot for the current tax:

> TO PROVIDE FUNDS TO SUPPLEMENT PRIVATE EFFORTS TO ACQUIRE LAND FOR THE MCDOWELL SONORAN PRESERVE FOR THE PURPOSE OF MAINTAINING SCENIC VIEWS, PRESERVING PLANT AND WILDLIFE, AND SUPPORTING OUR LARGEST INDUSTRY, TOURISM, WHILE PROVIDING APPROPRIATE PUBLIC ACCESS AND PASSIVE OUTDOOR RECREATIONAL OPPORTUNITIES FOR RESIDENTS AND VISITORS.

By contrast, the purposes of the proposed measure in this case are:

> TO FUND: 1) IMPROVEMENTS AND MAINTENANCE FOR CITYWIDE PARKS AND RECREATIONAL FACILITIES; 2) MAINTENANCE AND PROTECTION FOR THE MCDOWELL SONORAN PRESERVE; AND 3) INCREASED POLICE AND FIRE RESOURCES RELATED TO CITYWIDE PARKS AND THE PRESERVE.

Though the proposed measure has a nexus to the purpose of the current tax (the proposed tax will raise funds to maintain and protect land acquired under the current tax), the two purposes are not identical.

¶21        The purpose of the proposed measure suggests it builds on the original purpose of the current tax to "support[] our largest industry, tourism, while providing appropriate public access and passive outdoor recreational opportunities for residents and visitors." But the revenue generated by the proposed measure will, in part, maintain and improve the City's recreational facilities while providing resources for the personnel that keep users of those facilities safe. As noted by the superior court, the full text, Tagline Text and the "YES" and "NO" language all explain to voters that the current tax is expiring. But when the "revenues [of a proposed tax] . . . would be directed to different and broader uses than those under the current . . . tax," it is a new tax, not a continuation of the

current tax. *Tobin*, 231 Ariz. at 194–95, ¶ 17. While the proposed measure creates a new tax, part of which arguably furthers the purposes of the current tax, it is not misleading to use the term "replace" because the new tax will take the place of the current tax.

## IV. The term "reduce" is misleading.

**¶22** Residents next argue that the description's use of "reduce" is false and misleading because the proposed measure will raise, not reduce, the tax rate. They contend the current tax rate will expire, dropping the tax rate to 0%, and then this new rate will become effective, raising the rate to 0.15%. In response, the City argues that, if the proposition passes, the tax rate continues past its expiration date, but at the reduced rate; thus, the proposition reduces the tax rate. As discussed above, the proposition does not continue the current tax; it creates a new tax, "the revenues of which would be directed to different and broader uses than those under the current tax." *Tobin*, 231 Ariz. at 194-95, ¶ 17. The new tax rate neither reduces the current tax rate (because the tax will remain at 0.20% until it expires) nor reduces the current tax rate *after* its expiration (because it would create a new tax).

**¶23** In *Tobin*, the court reviewed an analysis of an initiative and held that a "repeated reference to a 'tax increase' . . . 'attempts to persuade the reader at the very outset' that the initiative is contrary to his or her financial interests" and as such may be misleading. *Id.* at 195, ¶ 18. Here, the language suggests that a voter will receive a benefit—a tax reduction. The description that a "YES" vote would reduce the "transaction privilege and use tax rate"—a total of 1.75% and made up of multiple different taxes, including the 0.20% at issue here—to 0.15% is misleading because a "YES" vote, in fact, implements a new tax which is only a portion of the transaction privilege and use tax rate. Though "[i]t is both a long-standing rule and a fundamental principle of our system of government that all people of sound mind are presumed to know the law," *Delmastro & Eells v. Taco Bell Corp.*, 228 Ariz. 134, 143, ¶ 29 (App. 2011), the City cannot rely on a legal presumption to entice its voters to adopt a new tax disguised as a tax reduction, *see* A.R.S. § 19-125(D) ("In the case of a referendum, a 'yes' vote shall have the effect of approving the legislative enactment that is being referred.").

**¶24** Additionally, unlike *Quality Education*, the "NO" provision here is misleading. The "YES" provision must "stat[e] the essential change in the existing law should the measure receive a majority of votes cast in that particular manner." A.R.S. § 19-125(D). Similarly, the "NO" provision

must explain the effect on existing law should the measure receive less than a majority of votes cast. *Id.* For example, in *Quality Education*, the "NO" provision the Supreme Court upheld was plain and simple, stating "A 'no' vote shall have the effect of not increasing the state sales tax." 231 Ariz. at 207, ¶ 4. Here, the "NO" language in both the full text and Tagline Text fails to communicate the essential change that a "NO" vote would effectuate—the current tax would terminate as scheduled and no longer exist. A "NO" vote does not result in a reduction as the language states; a "NO" vote results in the current tax terminating on June 30, 2025, as currently scheduled.

**¶25**        Citing *Molera*, the City argues this Court's analysis is limited to whether "the chosen language would alert a reasonable person to the principal provisions' general objectives" and if it does so, "that is sufficient." 250 Ariz. at 20, ¶ 11. The City also argues that when read in context of the entire Proposition, the ballot language meets the legal standard.

**¶26**        But in reviewing ballot language, courts do not interpret isolated portions of text; rather, the provision is considered in context. *Protect Our Ariz. v. Fontes*, 254 Ariz. 288, 294, ¶¶ 15–17 (2023) (refusing to interpret sentences in an initiative description apart from the full text); *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 21, ¶ 19 (2018) ("We must not interpret terms in isolation, but rather in their overall context."). And although *Molera* is instructive because it defines the term "principal provisions" (a term used in § 19-125) it addresses § 19-102 rather than § 19-125. *Molera's* holding that, "[i]f the chosen language would alert a reasonable person to the principal provisions' general objectives, that is sufficient," does not address the second part of § 19-125(D) regarding whether the ballot language communicates the "essential change in the existing law." 250 Ariz. at 20, ¶ 11; A.R.S. § 19-125(D). Even in context, with all of the words used by the City to describe the Proposition[4] the "NO" language fails to "state the essential change in the existing law should the measure receive a majority of votes cast in that particular manner." A.R.S. § 19-125(D).

---

[4] The City suggests that other materials clarify the ballot language and provide appropriate information for voters. But A.R.S. § 19-125(D) addresses *the language on the ballot*. Therefore, it is inappropriate to look to publicity materials that a voter may not have access to in deciding whether ballot language is misleading.

¶27  The City's arguments that it can implement a new tax, after the current tax expires, by describing it as a tax reduction are not persuasive. It is unreasonable and misleading to describe a new tax as a tax reduction. Though language that is fairly debatable and potentially subject to differing interpretations may comply with § 19-125(D), the City's description fails to properly disclose the proposition's principal provisions and essential changes by describing it as a tax reduction, rendering the approved ballot language misleading.

¶28  For these reasons, the superior court erred in finding that the term "reduce" is not misleading.

## V. Injunctive relief is proper.

¶29  The denial of a request for injunctive relief typically is reviewed for an abuse of discretion. *Fann v. State*, 251 Ariz. 425, 432, ¶ 15 (2021). Here, however, the sole reason for the denial of the Residents' request for a permanent injunction is the superior court's dismissal of Count 1, which this Court has concluded was error. As a result, Residents have now succeeded on the merits. Moreover, injunctive relief will not cause harm, and the balance of any hardships and public policy favor issuance of injunctive relief. *See id. at* 432, ¶ 16; *Brown v. City of Phoenix*, 1 CA-CV 23-0273, 1 CA-CV 23-0689, 2024 WL 3948230, at *4, ¶ 17 (App. Aug. 27, 2024) (setting the standard for obtaining a permanent injunction). For these reasons, the City is hereby enjoined from including the proposed ballot language approved by the City in June 2024 on the 2024 ballot.

## VI. Attorneys' Fees and Costs

¶30  Residents request attorneys' fees pursuant to the private attorney general doctrine and A.R.S. § 12-348. To receive an award of attorneys' fees under the private attorney general doctrine, the prevailing party must "vindicate[] a right that (1) benefits a large number of people, (2) requires private enforcement, and (3) is of societal importance." *Ansley v. Banner Health Network*, 248 Ariz. 143, 153, ¶ 40 (2020). Here, the case benefited the entirety of Scottsdale's electorate and required private enforcement because the government was advocating for the proposed ballot language. Additionally, the integrity of elections and clear ballot descriptions are of societal importance. For these reasons, Residents' challenge satisfies the criteria for an attorneys' fee award under the private attorney general doctrine. *See Ariz. School Boards Assoc., Inc. v. State*, 252 Ariz. 219, 229, ¶ 44 (2022) (awarding fees in a constitutional challenge against legislative action). This Court, therefore, need not address whether

Residents are entitled to attorneys' fees under § 12-348. In exercising its discretion, this Court awards Residents their reasonable attorney fees on appeal in the amount of $45,000 and costs on appeal in the amount of $461.76. Upon issuance of the mandate, Residents may request that the superior court award attorneys' fees and costs incurred in the proceedings before that court.

## CONCLUSION

**¶31** Treating the putative appeal as a petition for special action relief and exercising special action jurisdiction, this Court grants relief. The superior court's ruling is reversed, and the City is enjoined from including the ballot language approved by the City in June 2024 on the 2024 ballot.

C A T L E T T, Judge, specially concurring:

**¶32** I join the court's opinion in full. I write separately to further explain the applicable legal standards for ballot-language challenges under A.R.S. § 19-125 and why the approval procedure the Scottsdale City Council followed here should result in a less-deferential review.

### I.

**¶33** In its briefing, the City of Scottsdale ("Scottsdale") emphasizes voters' right to pass on a proposed ballot measure. Scottsdale is right to do so. Direct lawmaking through referendum, initiative, or legislative referral, each of which is enshrined in the Arizona Constitution, is an important component of the separation of powers in Arizona. *See Toma v. Fontes*, ___ Ariz. ___, ___ ¶ 70, 553 P.3d 881, 898 (App. 2024). But voters have a concomitant interest in voting with eyes wide open and in not being led astray by false or misleading election materials—particularly when those materials are provided by the government itself—including, most importantly, the language on the ballot. False or misleading election materials undermine the separation of powers and distort direct democracy.

**¶34** State law therefore establishes a process for preparing the language on the ballot describing ballot measures, including legislative referrals. *See* A.R.S. § 19-125(D). At the state level, after the legislature refers a constitutional amendment or proposed law to the people for

approval, the Secretary of State drafts proposed ballot language. *See id.* That language must include a 50-word summary of the principal provision

of the measure and explain the effect a "yes" or "no" vote will have on existing law. *See id.* The legislature does not approve or exercise veto power over the proposed ballot language. Instead, the Attorney General reviews and approves it. *See id.* That process makes a better end-product. The legislature, as the referring party, is omitted from the drafting and approval process in favor of two officials who had no say in the underlying referral decision. Handling things in that manner increases the chances the resulting ballot language will not be slanted toward approval or disapproval.

¶35        The courts also serve as a backstop to ensure the resulting language is not "misleading, inaccurate, lacking in neutrality, or argumentative." *See Quality Educ. & Jobs Supporting I-16-2012 v. Bennett*, 231 Ariz. 206, 208 ¶ 6 (2013) ("*Quality Education*"). Because the expectation is that the Secretary of State will be neutral when drafting, courts give the Secretary "due deference" when reviewing ballot language for substantial compliance with § 19-125(D). *See id.*

¶36        When other legislative bodies (*e.g.*, legislative bodies for cities, towns, or counties) make ballot referrals, the prescribed process for crafting the ballot language is roughly the same, with one significant legal difference. The law requires that uniformity—under A.R.S. § 19-141(D), the process followed for city, town, or municipal referrals "shall be as nearly as practicable the same" as that followed for state legislative referrals. The only difference is that the city or town clerk, or the county official in charge of elections, drafts the ballot language (based on the text of the referred law) and the city, town, or county attorney approves it. *See* A.R.S. § 19-141(A). Once the clerk or county election official drafts the language and the relevant attorney approves it, the language heads for the ballot. *See* A.R.S. §§ 19-125(D), 19-141(A).

¶37        If the resulting ballot language for a city, town, or county referral is challenged, the procedures in § 19-125 and the standards articulated in *Quality Education* guide the way; other election laws or jurisprudence are not *binding*. Our supreme court made that point in *Quality Education*. There, in interpreting § 19-125, the court refused to "import wholesale" the standards in § 19-124 and the caselaw interpreting those standards because that statute governs the Legislative Council's ballot analysis, not the Secretary of State's ballot language. The court refused to import those standards because §§ 19-124 and -125 have

LANE, et al. v. SCOTTSDALE, et al.
Opinion of the Court
Catlett, J., Special Concurrence

"different requirements and purposes." *See Quality Educ.*, 231 Ariz. at 208-09 ¶ 10. In my view, courts should similarly avoid importing requirements or standards from other election law contexts into their ballot-language analysis.

¶38 Here, and in the superior court, the parties focused their arguments on the standards in A.R.S. § 19-101 and *Molera v. Hobbs*, 250 Ariz. 13 (2020), which interpreted A.R.S. § 19-102. But neither § 19-101 nor § 19-102 governs here. Section 19-101(A) regulates "the form for referring to the people by referendum *petition* a measure or item, section or part of a measure enacted by the legislature, or by the legislative body of an incorporated city, town or county[.]" (Emphasis added.) Section 19-102(A) regulates the "[t]he form of petition for a law or amendment to the constitution of this state or county legislative measure, or city or town ordinance . . . proposed by the initiative to be submitted directly to the electors[.]" Both statutes govern petition forms for gathering signatures, and each requires that such forms contain a 200-word description of the principal provisions of the ballot measure. *See* A.R.S. §§ 19-101(A), 19-102(A).

¶39 Neither of those statutes nor any opinion interpreting them (including *Molera*) governs or displaces the requirements in § 19-125 for ballot language. The procedures in §§ 19-101 and -102, on the one hand, and § 19-125, on the other, have "different requirements and purposes." *Quality Educ.*, 231 Ariz. at 208-09 ¶ 10. Because of those differences, courts should not "import wholesale" §§ 19-101 and -102's requirements, or the caselaw interpreting them, when deciding ballot-language challenges. *See id.*

¶40 To be clear, I'm not suggesting that caselaw applying the requirements in other election statutes is never relevant or helpful when analyzing ballot language. To the contrary, precedent addressing other election statutes may apply standards similar enough to those in § 19-125 and *Quality Education* to offer useful guidance. *See Molera*, 250 Ariz. at 19-20 ¶ 10 (citing *Quality Education* when clarifying the standards for initiative petitions). For example, when analyzing the 200-word description on initiative petition forms, we ask whether the description "either communicates objectively false or misleading information or obscures the principal provisions' basic thrust." *Id.* at 20 ¶ 13. That standard closely resembles the standard in *Quality Education*, and thus cases applying § 19-102 might prove helpful in determining when ballot language crosses the line and becomes false or misleading. But that still doesn't make the

LANE, et al. v. SCOTTSDALE, et al.
Opinion of the Court
Catlett, J., Special Concurrence

requirements in § 19-102 or the legal standards implementing those requirements *binding* in ballot-language cases.

**¶41**        And courts and advocates should keep in mind the differences between initiative petition forms and the ballot language when employing cases interpreting §§ 19-101 and -102.  For example, "[§] 19-102(A) does not require the description [in an initiative] to be impartial."  *Id.* at 19 ¶ 10.  On the other hand, ballot language should impartially summarize "the principal provisions of the measure" and state "the essential change in the existing law should the measure receive a majority of votes cast."  *See* A.R.S. § 19-125(D); *Quality Educ.*, 292 Ariz. at 208 ¶ 6 (explaining that ballot language cannot be "misleading, inaccurate, lacking in neutrality, or argumentative").  Moreover, the description on initiative petition forms can be up to 200 words long, while the descriptive title on the ballot is limited to 50 words.  *See* A.R.S. §§ 19-102(A), 19-125(D); *Quality Educ.*, 231 Ariz. at 208 ¶ 9 ("[T]he constraints prescribed in § 19-125(D) [are a] factor[] in assessing compliance with that statute.").  Again, given such differences, the standards for analyzing the requirements in §§ 19-101 and -102 are not *binding* when analyzing § 19-125, though how prior cases have applied those standards in particular scenarios may be helpful.

**¶42**        The court's opinion here is consistent with all of this.  The parties relied primarily on § 19-101 and *Molera*, but the court correctly applies § 19-125 and *Quality Education*.  And, in so doing, the court appropriately looks to caselaw from other election contexts for guidance.  For example, it relies on *Tobin v. Rea*, although that opinion addresses the Legislative Council's analysis.  *See* 231 Ariz. 189, 194 ¶ 12 (2013).  *Tobin* is germane because it discusses a situation, like here, where a ballot measure purports to impact an expiring tax. *See id.* ¶ 17.  The court in *Tobin* explained that the law existing before the election determines the impact of a proposed tax measure.  *See id.*  If current law says a tax will expire, then the post-expiration rate determines the proposed ballot measure's effect.  *See id.*  In *Tobin*, the sales tax rate upon expiration of a temporary sales tax would be 5.6%.  *See id.*  The court explained that "[t]he initiative would impose an additional one percent tax from that date forward, *to raise the rate to 6.6 percent.*"  *Id.* (emphasis added).  And the supreme court thought the superior court was wrong to say the ballot measure would "continue a temporary tax that would otherwise expire."  *Id.*  Instead, the revenues generated "would be directed to different and broader uses than those under the current" tax, thereby imposing a new tax.  *Id.* at 194-95.  *Tobin*'s analysis is helpful in determining whether the ballot language here—which says a new tax will replace and reduce an expiring tax—passes muster

LANE, et al. v. SCOTTSDALE, et al.
Opinion of the Court
Catlett, J., Special Concurrence

under § 19-125 and *Quality Education*, even if the *requirements* in § 19-124 have no application.

## II.

**¶43**    We also face a situation where the Scottsdale City Council had a direct role in choosing and approving the ballot language at issue.  The city clerk and town attorney created two ballot-language proposals and then let the City Council decide which to approve.  Option A said the new law would "extend and reduce" the existing tax rate and Option B said the new law would "replace and reduce" the existing tax rate.  The City Council chose Option B.

**¶44**    Section 19-125(D) does not permit a legislative body to draft or approve the ballot language.  For example, the Secretary of State and the Attorney General are not permitted to ask the legislature to vote on which of two ballot-language options it wants to appear on the ballot.

**¶45**    Having the City Council exercise ultimate authority over the ballot language is problematic for a few reasons.  The most obvious is that § 19-125 does not sanction that process, which effectively deprives the city clerk and city attorney of their drafting and approval authority.  Moreover, delegating the drafting and ultimate approval of ballot language to the legislative body for a city, town, or county increases the odds that the language chosen will be slanted toward achieving that body's policy goals. It also increases the odds that the state's interest in prohibiting local governments from influencing election outcomes will be harmed.  *See* A.R.S. § 9-500.14(A).  So, when we have a situation where a city council exercises ultimate approval authority over ballot language, at the very least, we should refuse to give the "due deference" ordinarily given when the drafting and approval process in § 19-125(D) is precisely followed.  *See Quality Educ.*, 231 Ariz. at 208 ¶ 6.  That doesn't mean, of course, that the ballot language will automatically be deemed false or misleading, but it does mean we will view the language with more skepticism.

**¶46**    At the end of the day though, whether we give due deference here or not makes no difference.  Even giving due deference, Scottsdale's proposed ballot language is misleading.  If passed, the ballot measure would impose a new tax, thereby increasing (not reducing) the tax rate that would otherwise exist on July 1, 2025.  Moreover, the proposed language misleadingly distorts the effect a "no" vote will have on Scottsdale's sales tax rate.   The court's opinion, after faithfully applying the relevant

LANE, et al. v. SCOTTSDALE, et al.
Opinion of the Court
Catlett, J., Special Concurrence

standards from § 19-125 and *Quality Education*, correctly enjoins Scottsdale from using the ballot language approved in June 2024 during the November 2024 election.  For these reasons, I join the opinion in full.

